Mary A. HARDY, Plaintiff,

v.

UNITED OF OMAHA LIFE INSURANCE COMPANY, Defendant.

No. 5:98–CV–25.

United States District Court, W.D. Michigan, Southern Division.

Dec. 3, 1999.

William F. Mills, Gruel, Mills, Nims & Pylman, Grand Rapids, MI, for Mary A. Hardy, plaintiff.

James E. Brenner, Clark Hill PLC, Detroit, MI, for United of Omaha Life Insurance Company, defendant.

### OPINION

QUIST, District Judge.

Plaintiff, Mary A. Hardy ("Hardy"), has sued Defendant, United of Omaha Life Insurance Company ("United of Omaha"), for breach of contract and violation of the Michigan Consumer Protection Act, M.C.L. §§ 445.901 to .922. The parties have filed Cross–Motions for Summary Judgment pursuant to Fed.R.Civ.P. 56.

### Facts

The facts in this case are almost entirely undisputed. The Plaintiff's husband, Mr. James Hardy, was an employee of the State of Michigan stationed in the office of the Family Independence Agency in Allegan, Michigan. Mr. Hardy's job involved driving to clients' homes for appointments. Mr. Hardy's work hours were from 8:00 a.m. to 4:30 p.m. Mr. Hardy commuted to work from Grand Haven, Michigan along M–40 through Hamilton, Michigan.

On October 2, 1995, at 4:45 p.m., Mr. Hardy was involved in an automobile accident. Mr. Hardy had just completed a work-related appointment in Hamilton. Mr. Hardy was traveling northbound on 47th Street when his car struck a truck traveling east on 140th Avenue which went through a stop sign.[1] Mr. Hardy died four days later as a result of injuries from the accident.

Mr. Hardy was covered as a state employee by two group insurance policies issued by United of Omaha. Mrs. Hardy, the named beneficiary in both policies, has been paid benefits under Policy No. GLG–5050, a basic group life insurance policy. The second policy, No. GUG–J990, which

provides "accidental duty death benefits," is the policy in dispute. This policy states in pertinent part:

If an insured person suffers loss of life due to injuries, United will pay the Accidental Duty Death Benefit of $100,000 (in addition to your basic amount of group life insurance under Policy No. GLG–5050). Loss of life must:

1. result from injuries received while performing the duties of the Insured person's employment with the Policyholder; ...

Accidental Duty Death Benefits are not payable for loss of life as the result of:

. . . .

5. an accident while you are traveling between your work station and your home, either as a pedestrian or in a private automobile, common carrier, carpool or vanpool (whether private or State sponsored), UNLESS you are in official travel status.

(Policy No. GUG–J990, Def.'s Br.Ex. 1 at 10; Pl.'s Br.Ex. 2 at 10.)

On March 26, 1996, Mrs. Hardy sent her claim for accidental duty death benefits to the State of Michigan. The Michigan Department of Civil Service forwarded the accidental duty death benefits claim to United of Omaha's regional group manager in Southfield, Michigan for review. The regional group manager then transmitted the claim to Diane Quinones in United of Omaha's group life claims office in Omaha, Nebraska.

After reviewing Hardy's claim, United of Omaha denied Hardy's claim for accidental duty death benefits on June 17, 1996, concluding that "[t]he information received does not indicate that James Hardy was performing the duties of his employment when he was involved in the motor vehicle accident...." (Letter from Quinones to Hardy, Def.'s Br.Ex. 6.)

---

1. Mr. Hardy was traveling in the direction of M–40 at the time of the accident, apparently to return home to Grand Haven. (See Russell Aff., ¶¶ 7–8, Pl.'s Br.Ex. 1; Letter from Phil-

lips to McIntyre, Pl.'s Br.Ex. 5.) It is undisputed that Mr. Hardy was not traveling to another appointment at the time of the accident.

Hardy appealed this determination internally, providing United of Omaha with additional information, consisting of a statement and map from Mr. Hardy's former supervisor, Judy Russell. Russell confirmed that Mr. Hardy had just completed a work-related appointment. Russell also stated that the accident occurred on a road that Mr. Hardy would not normally travel on during his commute and concluded that "Mr. Hardy was in the location of the accident as a direct result of a work-related activity." (Russell statement, Def.'s Br.Ex. 7.) United of Omaha sent a questionnaire to Russell requesting additional information. Susan Bailey–Carman, Director of the Allegan county Family Independence Agency (i.e., James Hardy's employer), responded to the questionnaire as follows:

1. Where was Mr. Hardy going after his appointment?  Homebound
2. Did he have another appointment? No.
3. What were his work hours? 8:00 a.m. to 4:30 p.m.
4. Was he going to his office?  No.
5. Where is his home and office in reference to the direction of travel?
   Mr. Hardy was heading North toward the Holland/Grand Haven area.  Office is in Allegan (South of accident). Mr. Hardy resided in Grand Haven

... Was Mr. Hardy in "Official Travel Status" when this accident occurred?

Mr. Hardy's work day had ended and he was traveling to his home.

(Letter from Bailey–Carman to Quinones, Def.'s Br.Ex. 10.)

Based upon this information, United of Omaha upheld its previous denial. In October 1997, Hardy was awarded worker's compensation death benefits upon the conclusion by the worker's compensation insurer that "[b]ecause [Hardy] was not yet on his normal route from the office to his home, this accident was considered to be in the course of his employment." (Letter from Phillips to McIntyre, Pl.'s Br.Ex. 5.) Hardy notified United of Omaha of the worker's compensation determination that the accident was "in the course of his employment" and again requested that accidental duty death benefits be paid.  On November 18, 1997, Hardy's claim was again denied for the same reasons previously given, namely that Mr. Hardy was not performing the duties of his employer at the time of the accident, but rather was returning home from his job.

*Standard*

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.  Fed. R.Civ.P. 56.  The rule requires that the disputed facts be material.  Material facts are facts which are defined by substantive law and are necessary to apply the law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).  A dispute over trivial facts which are not necessary in order to apply the substantive law does not prevent the granting of a motion for summary judgment. *See id.* at 248, 106 S.Ct. at 2510.  The rule also requires the dispute to be genuine.  A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *See id.*  This standard requires the non-moving party to present more than a scintilla of evidence to defeat the motion. *See id.* at 251, 106 S.Ct. at 2511 (citing *Schuylkill and Dauphin Imp. Co. v. Munson,* 14 Wall. 442, 448, 20 L.Ed. 867 (1871)).  The summary judgment standard mirrors the standard for a directed verdict. *See id.* at 250, 106 S.Ct. at 2511.  The only difference between the two is procedural. *See id.* Summary judgment is made based on documentary evidence before trial, and directed verdict is made based on evidence submitted at trial. *See id.*

A moving party who does not have the burden of proof at trial may properly support a motion for summary judgment by showing the court that there is no evidence to support the non-moving party's case. *See Celotex Corp. v. Catrett,* 477 U.S. 317,

324–25, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). If the motion is so supported, the party opposing the motion must then demonstrate with "concrete evidence" that there is a genuine issue of material fact for trial. *Id.; see also Frank v. D'Ambrosi,* 4 F.3d 1378, 1384 (6th Cir. 1993). The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle,* 967 F.2d 233, 236 (6th Cir.1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

### Analysis

### A. Any ambiguity in the policy language must be construed in favor of Hardy.

Michigan law is well established that " 'a policy of insurance couched in language chosen by the insurer must be given the construction of which it is susceptible most favorable to the insured.' " *Powers v. Detroit Auto. Inter–Insurance Exchange,* 427 Mich. 602, 620, 398 N.W.2d 411, 419 (1986) (en banc) (quoting *Pietrantonio v. Travelers Ins. Co.,* 282 Mich. 111, 116, 275 N.W. 786, 788 (1937) (en banc)). "[I]n a case of ambiguity, the language must be strongly construed against the insurer." *Id.* at 621–22, 398 N.W.2d at 419 (quoting *Boesky Bros. Twelfth St. Corp. v. United States Fidelity & Guar. Co.,* 267 Mich. 628, 629, 255 N.W. 307, 307 (1934)). Similarly, " 'exceptions in an insurance policy to the general liability provided for are to be strictly construed against the insurer.' " *Id.* at 620, 398 N.W.2d 411, 398 N.W.2d at 419 (quoting *Pietrantonio,* 282 Mich. at 116, 275 N.W. at 788).

### B. Construing ambiguity in the policy in favor of the insured, Mr. Hardy's death fell within the scope of the policy.

The policy coverage is limited to loss of life "while performing the duties of the Insured person's employment...." The phrase "while performing the duties of the Insured person's employment" is not defined in the policy.

United of Omaha has indicated that the policy holder, namely the State of Michigan, typically determines whether an accident is considered to have occurred "while performing the duties of the insured person's employment." (*See* Quinones Dep. at 38, Pl.'s Br.Ex. 3.) However, the State of Michigan has not indicated whether Mr. Hardy died "while performing the duties" of his employment. Hardy argues that the State of Michigan concluded that Mr. Hardy's death was within the scope of the policy when Mr. Warner, Personnel Supervisor for the Michigan Department of Social Services, wrote Hardy a letter which stated that "[Mr. Hardy's] death occurred during the course of his employment...." (Letter from Warner to Hardy, Pl.'s Br. Ex. 4.) However, the context of Warner's letter to Hardy indicates that Mr. Warner was not representing that the State of Michigan concluded that Hardy is entitled to accidental duty death benefits. Warner's letter indicates that "[Mr. Hardy's] death occurred during the course of his employment," a phrase which parallels the worker's compensation standard for obtaining benefits, not the language of the insurance policy. *See* M.C.L. § 418.301(1) (providing benefits for injuries "arising out of and in the course of employment"). Furthermore, the letter explicitly states that "you as his beneficiary *could* be entitled to receive the accidental duty death benefit" but that it was up to "United of Omaha to determine the benefit eligibility." (*Id.* (emphasis added).) As a result, Hardy's argument that the State of Michigan determined that she was entitled to accidental duty death benefits is not dispositive.

Hardy's argument that the Court should look to the worker's compensation insurer's determination that Mr. Hardy died while "in the course of his employment" is similarly not dispositive. (*See* Pl.'s Br.Ex. 5.) This Court is not bound by the worker's

compensation determination by the insurance company. In fact, the Court would not be bound by a ruling of the Workers' Compensation Appellate Commission on appeal of the insurer's determination. *See, e.g., Chambo v. City of Detroit, Police Dep't,* 83 Mich.App. 623, 626, 269 N.W.2d 243, 244 (1978) (per curiam). Additionally, the scope of workers' compensation coverage is significantly broader than the coverage in the policy at issue in this case. The workers' compensation statute provides benefits for injuries "arising out of and in the course of employment." M.C.L. § 418.301(1). This statutory standard has been held to be broader than the phrase "while engaged in the employment of the insured." *See State Farm Mut. Auto. Ins. Co. v. Roe,* 226 Mich.App. 258, 267, 573 N.W.2d 628, 633 (1997) (citing *Francis v. Scheper,* 326 Mich. 441, 447–48, 40 N.W.2d 214, 217 (1949) (en banc)). The policy in this case covers injuries suffered "while performing the duties" of employment, a phrase which is very similar to the "engaged in" employment language distinguished from the workers' compensation standard in *State Farm.*

Furthermore, the phrase "while performing the duties" of employment does not have a distinctive legal meaning. The parties have not cited a single case interpreting the phrase "while performing the duties" of employment in an insurance contract. Therefore, the Court finds the phrase "while performing the duties" of employment to be ambiguous.

■ Construing the ambiguous policy language in favor of Hardy, the Court finds that Mr. Hardy's accident occurred "while performing the duties" of his employment. United of Omaha has admitted that traveling to or from the office to an employment-related appointment and driving between appointments both constitute "performing the duties of the Insured person's employment." (Quinones Dep. at 33, Pl.'s Br.Ex. 3) The facts involved in this case warrant a similar conclusion. Mr. Hardy was driving his car at the time and place of the accident because of his em-

ployment-related duties. In addition to getting to the place of his appointment, Mr. Hardy's employment required him to leave the place of his appointment in his car. The fact that it was easier for Mr. Hardy to drive in the direction of his home after the appointment, rather than return to the office first, does not change the nature of his actions. Mr. Hardy was traveling outside of his normal commute from his office as a result of his employment duties and, therefore, must be allowed to return to either his office or his normal commute path as part of his employment duties.

Furthermore, Mr. Hardy was completing a "special mission" arising out of his employment duties, for the benefit of the State of Michigan, at the time of the accident. Michigan law considers such an injury to be related to Mr. Hardy's employment duties. *Cf. Camburn v. Northwest Sch. Dist./Jackson Community Sch.,* 220 Mich.App. 358, 365, 559 N.W.2d 370, 373 (1996) (per curiam) (holding that an employee injured while on a special mission for his employer may recover workers compensation benefits for injuries that occur while traveling to or coming from work), *appeal granted,* 457 Mich. 851, 577 N.W.2d 692 (1998). Accordingly, the Court finds that Mr. Hardy's accident falls within the scope of the policy.

**C. The policy exception does not exclude coverage in this case.**

Paragraph 5 of the policy excludes "accident[s] while you are traveling between your work station and your home." United of Omaha's policy fails to define the term "work station." (*See* Quinones Dep. at 17, Pl.'s Br.Ex. 3.) The Random House Dictionary of the English Language (2d ed. Unabridged 1987) defines "work station" as "a work or office area assigned to one person, often one accommodating a computer terminal or other electronic equipment." Additionally, the State of Michigan Standardized Travel Regulations defines the term "work station" for field

employees, such as Mr. Hardy, as the "city or town in which the employee has his/her headquarters, or the city or town nearest to the area where the majority of his/her work is performed, or such other city, town or area as may be designated by the agency head...." (State of Michigan Standardized Travel Regulations § 4.3, Pl.'s Br.Ex. 7.) Therefore, the Court determines that under either the common dictionary definition or the Michigan Travel Regulations, Mr. Hardy's work station was either the city of Allegan or the Allegan FIA office.

■ As a result, the policy only excluded any accident involving Mr. Hardy while he was traveling between the Allegan office and his home. "[E]xceptions in an insurance policy to the general liability provided for are to be strictly construed against the insurer." *Powers*, 427 Mich. at 620, 398 N.W.2d at 419 (quoting *Pietrantonio*, 282 Mich. at 116, 275 N.W. at 788). United of Omaha has admitted that Mr. Hardy was not traveling between his office and his home at the time of the accident. (*See* Quinones Dep. at 51–52, Pl.'s Br.Ex. 3.) Therefore, paragraph 5 of the policy does not exclude the accident from coverage under the policy.

**D. Summary judgment will be entered in favor of United of Omaha on Hardy's Michigan Consumer Protection Act claim.**

■ Hardy's Michigan Consumer Protection Act ("MCPA") claim merely restates the claim in Count I for breach of contract resulting from the failure of United of Omaha to pay benefits under the policy. Hardy's complaint fails to specify any "[u]nfair, unconscionable, or deceptive methods, acts or practices in the conduct of trade or commerce" as required under the MCPA. M.C.L. § 445.903(1). As a matter of law, the Court finds that the parties had a genuine legal dispute over the scope of coverage under the policy and that United of Omaha's failure to pay benefits under the policy does not violate the MCPA. Hardy has raised no arguments in her briefs in opposition to a grant of sum-

mary judgment in favor of United of Omaha on the MCPA claim. Therefore, summary judgment will be granted in favor of United of Omaha on the MCPA claim.

*Conclusion*

This case raises a very difficult legal issue which is not explicitly dealt with under Michigan law. However, construing the ambiguous policy language in favor of the insured, the Court holds that Hardy is entitled to accidental death duty benefits under the policy. For the foregoing reasons, summary judgment is granted in favor of Hardy on the breach of contract claim and in favor of United of Omaha on the MCPA claim.

An Order and Judgment consistent with this Opinion will be entered.