**DIRECTV, INC., a California corporation, Plaintiff/Counter–Defendant,**

and

**Hughes Electronics, Corp., a California corporation, Counter–Defendant,**

v.

**Eugene KARPINSKY, Defendant/Counter–Plaintiff.**

No. 02–CV–73929.

United States District Court, E.D. Michigan, Southern Division.

June 17, 2003.

lem, the ordinary standard of collusion or fraud is inappropriate.

448 So.2d at 592.

Norman C. Ankers, Bradley H. Darling, Honigman, Miller, for Directv.

John T. Hermann, Berkley, for Eugene Karpinsky.

*OPINION AND ORDER GRANTING DEFENDANT KARPINSKY'S MOTION FOR SUMMARY JUDGMENT; GRANTING COUNTER–DEFENDANTS DIRECTV'S AND HUGHES' MOTION FOR SUMMARY JUDGMENT; DENYING KARPINSKY'S MOTION FOR LEAVE TO AMEND COUNTERCLAIMS; AND DENYING KARPINSKY'S MOTION FOR RULE 11 SANCTIONS*

STEEH, District Judge.

Eugene Karpinsky moves for summary judgment of DirecTV's claims of: unauthorized reception of satellite signals in violation of 47 U.S.C. § 605(a); unauthorized interception of satellite communication in violation of 18 U.S.C. § 2511(1)(a); possession of pirate access devices in violation of 18 U.S.C. § 2511(1)(b); and conversion. DirecTV and Hughes Electronics, Corp., move for summary judgment of Eugene Karpinsky's counterclaims of: extortion, 18 U.S.C. § 876; conspiracy to commit extortion; violations of the federal Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. § 1692, and Michigan's Fair Collection Practices Act ("FCPA"), M.C.L. § 339.901; civil liability under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962; violations of the Michigan Consumer Protection Act ("MCPA"), M.C.L. § 445.911 *et seq.*; fraud and misrepresentation; and defamation. A hearing on the cross-motions for summary judgment was held on May 28, 2003. On May 14, 2003, Karpinsky filed two additional motions: a motion for leave to file amended counterclaims; and a motion for imposition of sanctions under Federal Rule of Civil Procedure 11. Oral argument on the May 14, 2003 motions would not significantly aid the decisional process, and it is thus ORDERED that these two motions be resolved without oral argument. *See* E.D. Mich. Local R. 7.1(e)(2). For the reasons set forth below, Eugene Karpinsky's motion for summary judgment of DirecTV's claims will be GRANTED. DirecTV's and Hughes Electronics' motion for summary judgment of Karpinsky's counterclaims will be GRANTED. Karpinsky's motion for leave to file amended counterclaims will be DENIED. Karpinsky's motion for Rule 11 sanctions will be DENIED.

## I. Background

DirecTV filed a complaint on October 1, 2002 alleging it executed writs of seizure on December 11, 2002 at a mail shipping facility used by non-party USA Cardcleaners to sell electronic devices that are used to unlawfully intercept DirecTV's encrypted satellite television transmissions. DirecTV alleges that, based on seized USA Cardcleaners' sales records, Karpinsky purchased a pirate access device known as a "Smartcard Recover System" on August 25, 2001, and purchased another "Smartcard Recover System" on September 27, 2001, both being shipped to Karpinsky's Oak Park, Michigan residence. DirecTV alleges Karpinsky purchased the devices for the purpose of viewing DirecTV's satellite television programing without authorization or payment. In Count I, DirecTV alleges Karpinsky received and assisted others in receiving unauthorized programming, in violation of 47 U.S.C. § 605(a). Count II alleges Karpinsky intentionally intercepted, endeavored to intercept, or procured others to intercept DirecTV's satellite programming in violation of 18 U.S.C. § 2511(1)(a). Count III alleges Karpinsky has possessed pirate access devices in violation of 18 U.S.C. § 2512(1)(b). Count IV alleges Karpinsky is liable in common law conversion for unlawfully intercepting DirecTV's satellite transmissions for his own use. DirecTV seeks injunctive relief under 47 U.S.C.

§ 605(e)(3)(B)(i) and 18 U.S.C. § 2520(b)(1), damages under 47 U.S.C. § 605(e)(3)(C)(i)(ii) and 18 U.S.C. § 2520(c)(2), or 47 U.S.C. § 605(e)(3)(C)(i)(I) and 18 U.S.C. § 2520(c)(2), and reasonable attorney fees under 47 U.S.C. § 605(e)(3)(B)(iii) and 18 U.S.C. § 2520(b)(3).

By way of leave granted, Karpinsky filed counterclaims against DirecTV[1] and DirecTV's parent corporation Hughes Electronics alleging he purchased and received two "Smartcard Recover System" devices from USA Cardcleaners for use on his personal computer, but that the devices never worked. Karpinsky alleges he received a letter from DirecTV's collection representative "DirecTV End User Development Group" in July 2002 accusing him of using the devices to steal DirecTV's transmissions. Karpinsky alleges that, notwithstanding his denials, he was repeatedly phoned by DirecTV's representative and told that, if he did not want to be sued or face criminal charges, he would need to pay DirecTV $4,500.00. In Count I of his counterclaim, Karpinsky alleges extortion under 18 U.S.C. § 876. Count II alleges conspiracy to commit extortion. Count III alleges violations of both the FDCPA and FCPA. Count IV alleges RICO liability. Count V alleges deceptive trade practices in violation of MCPA. Count VI alleges fraud and misrepresentation based on statements made to Karpinsky that he had attempted to steal DirecTV programming. Count VII alleges defamation based on alleged published false statements made to third-parties that Karpinsky committed a crime or violated a statute.

## II. Motions For Summary Judgment

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See FDIC v. Alexander*, 78 F.3d 1103, 1106 (6th Cir.1996). The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Kutrom Corp. v. City of Center Line*, 979 F.2d 1171, 1174 (6th Cir.1992).

The standard for determining whether summary judgment is appropriate is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Winningham v. North Am. Resources Corp.*, 42 F.3d 981, 984 (6th Cir. 1994) (citing *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir.1989)). The evidence and all inferences therefrom must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Enertech Elec., Inc. v. Mahoning County Comm'rs*, 85 F.3d 257, 259 (6th Cir.1996); *Wilson v. Stroh Co., Inc.*, 952 F.2d 942, 945 (6th Cir.1992). If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue

---

**1.** Defendant Karpinsky also alleges that "DirecTV End User Development Group" is a counter-defendant. Unless otherwise specified, references to DirecTV include DirecTV End User Development Group.

for trial." *First Nat'l Bank v. Cities Serv. Co.,* 391 U.S. 253, 270, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); *see also Adams v. Philip Morris, Inc.,* 67 F.3d 580, 583 (6th Cir.1995).

### A. *Karpinsky's Motion for Summary Judgment*

Karpinsky argues he is entitled to summary judgment of DirecTV's claims because DirecTV has no evidence to support a requisite finding that he, Karpinsky, ever intercepted a DirecTV satellite transmission. Karpinsky maintains that recently deposed DirecTV Vice President Larry Rissler admitted that the only evidence DirecTV has to support its claims are two receipts evidencing Karpinsky's purchase of the two "Smartcard Recovery System" devices. Karpinsky argues DirecTV has no evidence to dispute that he attempted, without success, to use the devices on his personal computer to restrict access to the Internet. Karpinsky continues that he cannot be held liable under 18 U.S.C. § 2511(1)(a) or 18 U.S.C. § 2512(1)(b) because these criminal statutes do not provide for civil liability. Karpinsky continues that he is entitled to summary judgment of DirecTV's conversion claims because: (1) DirecTV cannot prove he intercepted or "converted" a DirecTV satellite signal; (2) a satellite signal is not "personal property" subject to conversion, and; (3) the state conversion claim is preempted by federal copyright law.

47 U.S.C. § 605(a) provides:

(a) Practices prohibited

> Except as authorized by chapter 119, Title 18, no person *receiving, assisting in receiving,* transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio *shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through autho-*

*rized channels of transmission or reception,* (1) to any person other than the addressee, his agent, or attorney, (2) to a person employed or authorized to forward such communication to its destination, (3) to proper accounting or distributing officers of the various communicating centers over which the communication may be passed, (4) to the master of a ship under whom he is serving, (5) in response to a subpoena issued by a court of competent jurisdiction, or (6) on demand of other lawful authority. *No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.* No person *having received any intercepted radio communication* or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. This section shall not apply to the receiving, divulging, publishing, or utilizing the contents of any radio communication which is transmitted by any station for the use of the general public, which relates to ships, aircraft, vehicles, or persons in distress, or which is transmitted by an

amateur radio station operator or by a citizens band radio operator.

47 U.S.C. § 605(e)(3) provides:

(3)(A) *Any person aggrieved by any violation of subsection (a)* of this section or paragraph (4) of this subsection *may bring a civil action* in a United States district court or in any other court of competent jurisdiction.

(B) The court—

(i) may grant *temporary and final injunctions* on such terms as it may deem reasonable *to prevent or restrain violations* of subsection (a) of this section;

(ii) *may award damages* as described in subparagraph (C); and

(iii) shall *direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails.*

(C)(i) Damages awarded by any court under this section shall be computed, at the election of the aggrieved party, in accordance with either of the following subclauses;

(I) the party aggrieved may recover the actual damages suffered by him as a result of the violation and any profits of the violator that are attributable to the violation which are not taken into account in computing the actual damages; in determining the violator's profits, the party aggrieved shall be required to prove only the violator's gross revenue, and the violator shall be required to prove his deductible expenses and the elements of profit attributable to factors other than the violation; or

(II) the party aggrieved may recover an award of statutory damages for each violation of subsection (a) of this section involved in the action in a sum of not less than $1,000 or more than $10,000, as the court considers just, and for each violation of paragraph (4) of this subsection involved in the action an aggrieved party may recover statutory damages in a sum not less than $10,000, or more than $100,000, as the court considers just.

(ii) In any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation of subsection (a) of this section.

(iii) In any case where the court finds that the violator was not aware and had no reason to believe that his acts constituted a violation of this section, the court in its discretion may reduce the award of damages to a sum of not less than $250.

(emphasis added).

18 U.S.C. § 2511(1)(a) provides:

(1) Except as otherwise specifically provided in this chapter any person who—

(a) intentionally *intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept,* any wire, oral, or electronic communication ... shall be punished as provided in subsection (4) or shall be *subject to suit as provided in subsection (5).*

(emphasis added). 18 U.S.C. § 2511(5) reads:

(5)(a)(i) If the communication is—

(A) a private satellite video communication that is not scrambled or encrypted and the conduct in violation of this chapter is the private viewing of that communication and is not for a tortious or illegal purpose or for purposes of direct or indirect commercial advantage or private commercial gain; or

(B) a radio communication that is transmitted on frequencies allocated under subpart D of part 74 of the rules of the Federal Communications Commission that is not scrambled or encrypted and

the conduct in violation of this chapter is not for a tortious or illegal purpose or for purposes of direct or indirect commercial advantage or private commercial gain, then the person who engages in such conduct shall be *subject to suit by the Federal Government in a court of competent jurisdiction.*

(ii) In an action under this subsection—
(A) if the violation of this chapter is a first offense for the person under paragraph (a) of subsection (4) and such person has not been found liable in a civil action under section 2520 of this title, *the Federal Government shall be entitled to appropriate injunctive relief;* and

(B) if the violation of this chapter is a second or subsequent offense under paragraph (a) of subsection (4) or such person has been found liable in any prior civil action under section 2520, the person shall be subject to a mandatory $500 civil fine.

(b) The court may use any means within its authority to enforce an injunction issued under paragraph (ii)(A), and shall impose a civil fine of not less than $500 for each violation of such an injunction.

18 U.S.C. § 2512(1)(b) reads:

(1) Except as otherwise specifically provided in this chapter, any person who intentionally— . . .

(b) manufactures, assembles, *possesses, or sells any electronic, mechanical, or other device, knowing or having reason to know that the design of such device renders it primarily useful for the purpose of the surreptitious interception of wire, oral, or electronic communications,* and that such device or any component thereof has been or will be sent through the mail or transported in interstate or foreign commerce ... *shall be fined under this title or imprisoned not more than five years, or both.*

(emphasis added). 18 U.S.C. § 2520(a) and (b) provide:

(a) In general.—Except as provided in section 2511(2)(a)(ii), *any person whose* wire, oral, or *electronic communication is intercepted, disclosed, or intentionally used* in violation of this chapter *may in a civil action recover* from the person or entity, other than the United States, which engaged in that violation such relief as may be appropriate.

(b) Relief.—In an action under this section, appropriate relief includes—

(1) such *preliminary and other equitable or declaratory relief* as may be appropriate;

(2) *damages* under subsection (c) and *punitive damages* in appropriate cases; and.

(3) a *reasonable attorney's fee* and other litigation costs reasonably incurred.

(emphasis added).

▪ Where "the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.'" *Dorris v. Absher,* 179 F.3d 420, 429 (6th Cir.1999) (citing *United States v. Ron Pair Enter., Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290(1989)) (quoting *Caminetti v. United States,* 242 U.S. 470, 485, 37 S.Ct. 192, 61 L.Ed. 442 (1917)). 47 U.S.C. § 605(a) plainly states that a person violates the statute by "receiving," "assisting in receiving," or "intercept[ing]" electronic transmissions without proper authorization. 47 U.S.C. § 605(e)(3) permits any person aggrieved by such a violation to file a civil action seeking injunctive relief, damages, and reasonable attorney fees. 18 U.S.C. § 2511(1)(a) plainly states that a person violates the statute by intentionally "intercept[ing]," "endeavor[ing] to intercept," or "procur[ing] any other person to intercept or endeavor to intercept" an electronic communication. 18 U.S.C. § 2512(1)(b) makes it a crime to merely

"possess[ ] any electronic ... device knowing or having reason to know that the design of such device renders it primarily useful for the purpose of the surreptitious interception of ... electronic communications ...." Under the plain language of 18 U.S.C. § 2520(a), a "person" may file a civil suit premised on violations of § 2511(1)(a) and/or § 2512(1)(b) only if that person's "electronic communication is intercepted, disclosed, or intentionally used" in violation of § 2511(1)(a) and/or § 2512(1)(b).

█ Pursuant to the plain language of the statutes cited above, DirecTV must prove that Karpinsky received, assisted in receiving, or intercepted DirecTV's satellite transmissions to prevail under Count I alleging violations of 47 U.S.C. § 605(a), and that DirecTV's electronic satellite communications were intercepted, disclosed, or intentionally used by Karpinsky to prevail under Counts II and III alleging, respectively, violations of 18 U.S.C. § 2511(1)(a) and 18 U.S.C. § 2512(1)(b) vis-a-vis 18 U.S.C. § 2520(a). *Dorris,* 179 F.3d at 429. *United States v. Pritchard,* 773 F.2d 873 (7th Cir.1985), a criminal case relied upon by DirecTV involving an affirmed conviction under 18 U.S.C. § 2512(1)(b) for simple possession of a device primarily designed for the surreptitious interception of electronic devices, did not involve the civil enforcement remedies of 18 U.S.C. § 2520(a), and the statute's plain requirement that a civil plaintiff's communication be intercepted, disclosed, or intentionally used. Contrary to DirecTV's argument, Karpinsky's mere possession of two "Smartcard Recover System" devices in 2001 is insufficient to support a finding of liability against Karpinsky under 47 U.S.C. § 605(a), 18 U.S.C. § 2511(1)(a), or 18 U.S.C. § 2512(1)(b).

█ Likewise, possession alone of the "Smartcard Recovery System" devices is insufficient to prove DirecTV's claim of conversion as alleged in Count IV. "Conversion is any distinct act of dominion wrongfully exerted over another's personal property." *Trail Clinic, P.C. v. Bloch,* 114 Mich.App. 700, 705, 319 N.W.2d 638 (1982) (citing *Thoma v. Tracy Motor Sales, Inc.,* 360 Mich. 434, 438, 104 N.W.2d 360 (1960)). DirecTV does not allege that the "Smartcard Recovery System" devices were DirecTV's personal property. Assuming without deciding that satellite transmissions are "personal property" subject to conversion, DirecTV must prove that Karpinsky wrongfully exerted dominion over DirecTV's satellite transmissions.

Construing the pleadings and evidence in a light most favorable to plaintiff, DirecTV has failed to meet its burden of coming forward with evidence that would permit a reasonable fact-finder to conclude that Karpinsky in fact received, assisted in receiving, intercepted, disclosed, intentionally used, or wrongfully exerted control over DirecTV's satellite television transmissions. *First Nat'l Bank,* 391 U.S. at 270, 88 S.Ct. 1575; *Adams,* 67 F.3d at 583. It is undisputed that Karpinsky was not, and is not, a subscriber to DirecTV, and is not equipped with the receiver and satellite dish necessary to receive and interpret DirecTV's satellite transmissions. DirecTV does not allege, nor does it proffer evidence, that Karpinsky otherwise possessed the equipment necessary to receive and interpret satellite transmissions. DirecTV has not proffered evidence that Karpinsky knew others that possessed the electronic equipment required to receive DirecTV's broadcasts; it is undisputed that a "Smartcard Recovery System" device, on its own, is incapable of receiving satellite transmissions.

The evidence relied upon by DirecTV as proof that Karpinsky unlawfully intercepted or aided in unlawfully intercepting Di-

recTV satellite signals is: (1) Karpinsky's purchase and possession of the two "Smartcard Recovery System" devices in 2001; (2) DirecTV Vice President Larry Rissler's attestations that "I am unaware of any legitimate commercial or private use for Smartcard Recovery Systems, other than to assist with the interception and decryption of DIRECTV's transmission signals", Rissler February 10, 2003 Affidavit, ¶ 7, at 3, and; (3) Rissler's attestations to the effect that anyone who visited USA Cardcleaners former Internet website would have reason to know that the advertised devices "had as their primary use the illegal reception of DIRECTV's satellite signals," Rissler Supplemental Affidavit, ¶ 6, at 2. At best, this evidence raises a reasonable inference that Karpinsky possessed the two "Smartcard Recovery Systems" knowing they were primarily used to unlawfully intercept DirecTV signals. Rissler does not dispute the possible legitimate uses for the card claimed by Karpinsky. In light of the other evidence in the record, however, including that Karpinsky has never subscribed to DirecTV and has never owned the necessary satellite reception equipment, the court is persuaded on this record that a reasonable fact-finder could not infer that Karpinsky in fact unlawfully intercepted or aided in unlawfully intercepting DirecTV satellite signals. Accordingly, and consistent with the legal analysis set forth herein, Karpinsky is entitled to summary judgment of DirecTV's claims as a matter of law. *Winningham,* 42 F.3d at 984.

### B. *DirecTV's and Hughes Electronics' Motion for Summary Judgment*

#### i. *FDCPA and FCPA Counterclaims*

■ At the outset, Karpinsky concedes that DirecTV and Hughes Electronics (hereinafter collectively referred to as "DirecTV") are entitled to summary judgment of Karpinsky's counterclaim alleging violations of the federal FDCPA because Karpinsky's alleged theft of satellite television transmissions does not constitute a "debt." *See Coretti v. Lefkowitz,* 965 F.Supp. 3, 5 (D.Conn.1997) (holding that "[p]lainitff's alleged theft by use of an illegal decoding device does not constitute a 'debt' within the meaning of the FDCPA"); 15 U.S.C. § 1692a(5) ("The term 'debt' means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."). Michigan's FCPA defines "debt" to mean "an obligation or alleged obligation for the payment of money or thing of value arising out of an expressed or implied agreement or contract for a purchase made primarily for personal, family, or household purposes." M.C.L. § 339.901(a). DirecTV does not allege that Karpinsky is liable under an agreement or a contract of purchase. Analogous to the federal FDCPA, Karpinsky's alleged theft of DirecTV's satellite transmissions does not implicate Michigan's FCPA. DirecTV is entitled to summary judgment of Karpinsky's FDCPA and FCPA claims as alleged in Count III as a matter of law. *Winningham,* 42 F.3d at 984.

#### ii. *Extortion Counterclaims*

■ Karpinsky alleges DirecTV is liable under 18 U.S.C. § 876 for extortion and conspiracy to commit extortion. 18 U.S.C. § 876 is a federal criminal statute that does not authorize a civil cause of action. Accordingly, DirecTV is entitled to summary judgment of Karpinsky's counterclaims of extortion and conspiracy to commit extortion as alleged in Counts I and II as a matter of law. *Willing v. Lake Orion Community Schools Bd. of Trustees,* 924

F.Supp. 815, 818 (E.D.Mich.1996) (holding dismissal appropriate where criminal statute does not provide for civil cause of action); *Zolman v. Internal Revenue Service,* 87 F.Supp.2d 763, 765 (W.D.Mich. 1999) (same); *Winningham,* 42 F.3d at 984.

### iii. MCPA Counterclaim

Karpinsky alleges DirecTV is liable under the MCPA for deceptive trade practices. The MCPA defines specific, actionable "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce ...." M.C.L. § 445.903(1). The MCPA also defines "trade or commerce":

> "Trade or commerce" means the conduct of a business providing goods, property, or service primarily for personal, family, or household purposes and includes the advertising, solicitation, offering for sale or rent, sale, lease, or distribution of a service or property, tangible or intangible, real, personal, or mixed, or any other article, or a business opportunity. "Trade or commerce" does not include the purchase or sale of a franchise, but does include pyramid and chain promotions, as "franchise", "pyramid", and "chain promotions" are defined in Act No. 269 of the Public Acts of 1974, being sections 445.1501 to 445.1545 of the Michigan Compiled Laws.

M.C.L. § 445.902(d). The term "transaction" as used throughout the MCPA means the business conducted between the parties. *Zine v. Chrysler Corporation,* 236 Mich.App. 261, 280, 600 N.W.2d 384 (1999).

■ It is undisputed that Karpinsky is not a subscriber to DirecTV's satellite television services. It follows that Karpinsky and DirecTV have not engaged in "trade or commerce" by conducting business involving "the advertising, solicitation, offering for sale or rent, sale, lease, or distribu-

tion" of DirecTV's services. M.C.L. § 445.902(d). Rather, Karpinsky was accused by DirecTV of stealing satellite services. Accordingly, the MCPA is inapplicable, and DirecTV is entitled to summary judgment of Karpinsky's Count V counterclaim alleging violations of the MCPA as a matter of law. *Winningham,* 42 F.3d at 984.

### iv. Fraud and Misrepresentation Counterclaim

■ Karpinsky's allegations of fraud and misrepresentation are premised on statements made by DirecTV to Karpinsky involving its accusations that he had stolen or attempted to steal DirecTV satellite programming, including written and oral representations that Karpinsky in fact unlawfully intercepted DirecTV satellite transmissions, and that "Congress has made the mere possession of signal theft equipment a violation of federal law in certain circumstances."[2] Karpinsky alleges DirecTV made these representations for the purpose of causing Karpinsky to pay DirecTV $3,500.00 to $4,500.00 to settle the matter.

To establish a cause of action for fraud or misrepresentation, a plaintiff must prove (1) that the defendant made a material representation, (2) that the representation was false, (3) that when the defendant made the representation, the defendant knew that it was false, or made it recklessly without knowledge of its truth or falsity, (4) that the defendant made it with the intent that the plaintiff would act on it, (5) that the plaintiff acted in reliance on it, and (6) that the plaintiff suffered injury. *Baker v. Arbor Drugs, Inc.,* 215 Mich.App. 198, 208, 544 N.W.2d 727 (1996). An action for fraudulent misrepresentation must be predicated on a statement relating to a past

---

**2.** Karpinsky's April 29, 2003 Exhibit 2, Letter    from DirecTV End User Development Group.

or an existing fact. *Id.* at 208–209, 544 N.W.2d 727. Future promises are contractual and cannot constitute actionable fraud. *Id.*

*Eerdmans v. Maki,* 226 Mich.App. 360, 366, 573 N.W.2d 329 (1997). A plaintiff will be found to have relied upon a misrepresentation if the misrepresentation exerted a material influence upon the plaintiff's mind, even if only one of several motives, and produced the challenged result. *United States Fidelity and Guaranty Co. v. Black,* 412 Mich. 99, 121, 313 N.W.2d 77 (1981).

■ Karpinsky could not have reasonably relied upon DirecTV's allegations that he, Karpinsky, pirated DirecTV satellite transmissions; only Karpinsky knew in fact whether he used the two "Smartcard Recovery System" cards to unlawfully access DirecTV programming. DirecTV's representations of federal law, even if inaccurate, are not misrepresentations of past or existing *fact. Eerdmans,* 226 Mich. App. at 366, 573 N.W.2d 329. Further, even if the alleged misrepresentations constituted representations of past or existing fact on which Karpinsky could reasonably rely, these alleged misrepresentations never produced the alleged intended result—that Karpinsky pay DirecTV $3,500.00— $4,500.00 to settle the matter. Instead, Karpinsky chose not to pay the money, and awaited a possible federal lawsuit. Absent reliance, Karpinsky cannot prevail on his claims of fraud and misrepresentation as a matter of law. *United States Fidelity,* 412 Mich. at 121, 313 N.W.2d 77. DirecTV is entitled to summary judgment of Count VI alleging fraud and misrepresentation. *Winningham,* 42 F.3d at 984.

### v. Defamation Counterclaim

■ Karpinsky's allegation of defamation in Count VII is that DirecTV published remarks to unnamed "third-parties" that Karpinsky committed a crime or violated a criminal or civil statute.

The elements of a cause of action for defamation are (1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged publication to a third party, (3) fault amounting at least to negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by the publication (defamation per quod).

*Burden v. Elias Brothers Big Boy Restaurants,* 240 Mich.App. 723, 726, 613 N.W.2d 378 (2000).

■ In his counterclaim, Karpinsky fails to allege the name of the "third-party" to whom DirecTV published that Karpinsky had committed a crime or violated a criminal or civil statute. Karpinsky has also failed to meet his burden of coming forward with specific evidence to support his defamation counterclaim. *First Nat'l Bank,* 391 U.S. at 270, 88 S.Ct. 1575; *Adams,* 67 F.3d at 583. At best, Karpinsky's defamation claim as alleged in Count VII is conclusionary. DirecTV is entitled to summary judgment of Karpinsky's defamation claim as a matter of law. *Winningham,* 42 F.3d at 984.

### vi. RICO Counterclaim

■ Karpinsky's civil RICO allegations are based on DirecTV's alleged attempts to "collect an unlawful debt," commit extortion under 18 U.S.C. § 876, and to violate the FDCPA and FCPA. As explained in Section II, B, i and ii, DirecTV's accusations that Karpinsky was using a pirate access device to steal DirecTV's satellite transmissions does not implicate collection of a "debt", the FDCPA, or the FCPA. Further, a threat of litigation if a party fails to fulfill even a fraudulent obligation does not constitute extortion, and is insuf-

ficient to support a RICO claim as a matter of law. *Vemco v. Camardella,* 23 F.3d 129, 134 (6th Cir.1994). DirecTV is entitled to summary judgment of Karpinsky's RICO counterclaim as alleged in Count IV as a matter of law. *Winningham,* 42 F.3d at 984.

### III. Karpinsky's Motion to Amend

■ Leave to amend a complaint is to be freely granted when justice so requires. *See* Fed.R.Civ.P. 15(a). Generally, absent bad faith or dilatory motive on the part of the movant, leave to amend should be granted unless the amendment would not survive a motion to dismiss. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *Sinay v. Lamson & Sessions Co.,* 948 F.2d 1037, 1041–42 (6th Cir.1991); *Head v. Jellico Hous. Auht.,* 870 F.2d 1117, 1124 (6th Cir.1989). Karpinsky asks the court to grant him leave to amend his counterclaims to "correct any possible deficiencies." Karpinsky's May 14, 2003 Motion to Amend, ¶ 19.

■ In opposing DirecTV's motion for summary judgement, Karpinsky was required to come forward with "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank,* 391 U.S. at 270, 88 S.Ct. 1575. In the absence of specific discovery, Karpinsky was also required to respond by Rule 56(f) affidavit. Karpinsky cannot circumvent these requirements simply by filing a motion for leave to amend his counterclaims "to correct possible deficiencies." Karpinsky's counterclaims are not being dismissed under Rule 12(b)(6), but under Rule 56. Simply amending Karpinsky's counterclaims will not survive DirecTV's instant motion for summary judgment. Karpinsky's motion for leave to amend his counterclaims will be denied.

### IV. Karpinsky's Motion for Rule 11 Sanctions

■ In the Sixth Circuit, the standard for determining whether Rule 11 sanctions should be imposed is whether the challenged conduct was objectively reasonable under the circumstances. *Union Planters Bank v. L & J Development Co., Inc.,* 115 F.3d 378, 384 (6th Cir.1997). "The court is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted." Advisory Committee Notes to 1983 Amendment to Fed.R.Civ.P. 11. "That summary judgment is rendered against a party does not necessarily mean, for purposes of this certification, that it had no evidentiary support for its position." Advisory Committee Notes to 1993 Amendments to Fed.R.Civ.P. 11. Given the admission that Karpinsky purchased two "Smartcard Recovery System" devices that may be used to unlawfully intercept DirecTV's proprietary satellite television transmissions, the court finds that DirecTV acted objectively reasonable under these specific circumstances when filing this lawsuit; it was not objectively unreasonable for DirecTV to disbelieve Karpinsky's explanation that he did not use the two "Smartcard Recovery System" devices he purchased to steal satellite transmissions. Karpinsky's motion for Rule 11 sanctions will be denied.

### IV. Conclusion

For the reasons set forth above, Eugene Karpinsky's motion for summary judgment is hereby GRANTED. DirecTV's motion for summary judgment is also hereby GRANTED[3]. The parties claims

---

**3.** The court need not address that part of DirecTV's motion for summary judgment based on the *Noerr–Pennington* doctrine.

and counterclaims are hereby DIS-MISSED with prejudice in their entirety. Karpinsky's motion for leave to amend his counterclaims is hereby DENIED. Karpinsky's motion for Rule 11 sanctions is hereby DENIED.

SO ORDERED.

*JUDGMENT*

Pursuant to the court's order of even date granting Eugene Karpinsky's motion for summary judgment as well as DirecTV's and Hughes Electronic's motion for summary judgment,

IT IS ORDERED AND ADJUDGED that judgment is hereby GRANTED in favor of defendant Karpinsky as to DirecTV claims against Karpinsky. Judgment is hereby GRANTED in favor of DirecTV and Hughes Electronics as to Karpinsky's counterclaims. The parties competing claims and counterclaims are hereby DISMISSED in their entirety.

**TRUSTEES OF the CARPENTERS' PENSION TRUST FUND–Detroit and Vicinity and Trustees of the Millwrights' Local 1102 Supplemental Pension Fund, Plaintiffs,**

v.

**AAA MORTGAGE CORPORATION, Defendant.**

No. 99–74123.

United States District Court,
E.D. Michigan,
Southern Division.

July 3, 2003.

Lynn F. McGuire, John I. Tesija, Novara, Tesija Michela & Prichs, P.C., Southfield, MI, Counsel for Plaintiffs.

Gerard V. Mantese, Mark C. Rossman, Peggy Rancilio, Mantese and Associates, PC, Troy, MI, Counsel for Defendant.

Christopher P. Legghio, Martens, Ice, Geary, Klass, Legghio, Israel & Gorchow, P.C., Southfield, MI, Co-counsel for Plaintiffs Millwrights.

*ORDER DENYING PLAINTIFF CARPENTERS' DECEMBER 12, 2002 SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT; DENYING DEFENDANT'S MAY 2, 2003 MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF MILLWRIGHTS' MAY 16, 2003 SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT; AND GRANTING DEFENDANT'S APRIL 29, 2003 MOTION FOR SUMMARY JUDGMENT BASED UPON ERISA STATUTE OF LIMITATIONS*

O'MEARA, District Judge.

This matter came before the court on plaintiff Carpenters' December 12, 2002 second motion for partial summary judgment; defendant AAA Mortgage's April 29, 2003 motion for summary judgment based upon ERISA statute of limitations and preemption; defendant AAA Mortgage's May 2, 2003 motion for summary judgment for lack of factual and legal foundation; and plaintiff Millwrights' May 16, 2003 second motion for partial summary judgment. The issues were fully briefed, and oral argument was heard June 20, 2003.

### BACKGROUND FACTS

The plaintiff pension funds filed suit August 20, 1999, to obtain documents from defendant AAA Mortgage, a mortgage company that had been fired by the funds. In a November 19, 1999 letter from John Tesija, plaintiff Carpenters' counsel, to Richard Maddin, AAA's initial counsel, Tesija stated that once AAA Mortgage turned over the documents, the case would be dismissed. Defendant's Ex. 3. At some point, AAA finally relinquished the documents Plaintiffs had been seeking. However, instead of dismissing the complaint as initially contemplated by the parties, Plaintiffs filed the First Amended Com-

plaint ("FAC") a year later, in December 2000. Since then the parties have expended exorbitant resources in pursuing and defending the claims. The current docket sheet has recorded more than 425 entries in this case, and Defendant claims it has already spent over one million dollars in attorneys' fees.

The FAC alleged breach of fiduciary duty under ERISA in Count I; it is the only federal claim alleged. Though not specifically pleaded in the FAC, Plaintiffs have raised claims relating to AAA's collection of mortgage fees from borrowers, the interest rates charged by AAA, AAA's use of addenda to the loans, and AAA's lack of aggressiveness in initiating foreclosure proceedings as breaches of AAA Mortgage's fiduciary duty. Count II alleges "Breach of Fiduciary Duty under State Law"; Count III alleges breach of contract; Count IV alleges fraud and misrepresentation; Count V alleges "Claim and Delivery"; Count VI alleges misappropriation of trade secrets; and Count VII alleges conversion.

Defendant's bases for seeking summary judgment in its April 29, 2003 motion is that Plaintiffs' claims are barred by ERISA's three-year statute of limitations and that Plaintiffs' state claims are preempted by ERISA.

### LAW AND ANALYSIS

ERISA's statute of limitations provides, in pertinent part,

No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty or obligation under this part, or with respect to a violation of this part, after the earlier of—

(1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission, latest date on which the fiduciary could have cured the breach or violation, or