**DIRECTV, INC., Plaintiff,**

v.

**Antonio CARDONA, Defendant.**

**No. 6:03–CV–675–Orl–22KRS.**

United States District Court,
M.D. Florida,
Orlando Division.

July 8, 2003.

1358

James A. Boatman, Jr., Viktoria Collins, Stump, Storey, Callahan & Dietrich, P.A., Orlando, FL, for plaintiff.

Louise B. Zeuli, Louise B. Zeuli, P.A., Maitland, FL, for defendant.

**ORDER**

CONWAY, District Judge.

## I. INTRODUCTION

This cause comes before the Court for consideration of the Defendant's, Antonio Cardona, Motion to Dismiss (Doc. No. 6), and memorandum of law in support thereof (Doc. No. 7), filed May 22, 2003, to which the Plaintiff, DIRECTV, Inc. ("Direct Television"), responded (Doc. No. 10) on May 28, 2003. Having reviewed the motion and memoranda, this Court **GRANTS IN PART** and **DENIES IN PART** the Defendant's Motion to Dismiss (Doc. No. 6).

## II. BACKGROUND

For the purpose of this Motion to Dismiss, the Court accepts the following facts

derived from the Plaintiff's Complaint for Compensatory, Statutory, and Other Damages, and for Injunctive Relief (Doc. No. 2, filed May 22, 2003) as true.[1]

The Plaintiff, Direct Television, is a California corporation with its principal place of business located in the State of California.[2] At all relevant times herein, the Defendant, Antonio Cardona, was a resident of the Middle District of Florida.[3] This is a civil action brought pursuant to the Federal Communications Act of 1934, 47 U.S.C. § 605, and the Omnibus Crime Control and Safe Streets Act of 1968, as amended by the Electronic Communications Privacy Act of 1986, and the Communications Assistance for Law Enforcement Act of 1994, 18 U.S.C. §§ 2510–22 ("the Wiretap Act").[4]

The Plaintiff, Direct Television, is in the business of providing television programming to millions of subscribers in the United States through a direct broadcast satellite system.[5] In order to prevent unauthorized and unpaid viewing of its programming, Direct Television encrypts (scrambles) its satellite transmissions and employs conditional access technology.[6] Conditional access technology consists of "access cards" which, upon activation by Direct Television, decrypts (unscrambles) satellite transmissions, permitting subscribers of Direct Television to clearly view its television programming.[7]

According to the Complaint, despite elaborate security measures, several companies are currently selling illegally modified access cards and other devices ("pirate access devices") that permit the viewing of Direct Television's satellite transmissions without authorization by or payment to Direct Television.[8] Apparently, many of these companies employ Fulfillment Plus, a mail shipping facility located in Central California, to transact their business.[9] For this reason, on or about May 25, 2001, Direct Television began executing Writs of Seizure at Fulfillment Plus securing sales records, shipping records, email communications, credit card receipts, and other records evidencing the sale and purchase of pirate access devices.[10]

According to the Plaintiff, the aforementioned Writs of Seizure produced evidence indicating that the Defendant, Antonio Cardona, purchased a pirate access device.[11] Specifically, the Complaint avers that on or about November 27, 2000 Cardona placed an order with DSS–Stuff for a "Terminator Unlooper with Case", and that he received his order at his address in Orlando, Florida via the United States Postal Service or another commercial mail

---

**1.** *See Brown v. Crawford County*, 960 F.2d 1002, 1010 (11th Cir.1992) ("For a motion to dismiss to be granted, plaintiff's complaint, factually accepted as correct, must evidence that there is no set of facts entitling him to relief") (internal citation omitted).

**2.** *See* Complaint for Compensatory, Statutory and Other Damages, and for Injunctive Relief (Doc. No. 2), ¶ 17 at 5.

**3.** *See id.,* ¶ 18 at 5.

**4.** *See generally id.*

**5.** *See id.,* ¶ 2 at 1–2.

**6.** *See id.,* ¶ 4 at 2.

**7.** *See id.*

**8.** *See id.,* ¶¶ 16 & 18 at 5.

**9.** *See id.,* ¶ 16 at 5.

**10.** *See id.*

**11.** *See id.,* ¶ 22 & ¶ 22(a) at 7.

carrier.[12]

Based on that information, the Plaintiff filed the instant three count lawsuit against the Defendant on May 22, 2003.[13] Count I of the Complaint alleges that the Defendant received and/or assisted others in receiving Direct Television's satellite signals without authorization, in violation of 47 U.S.C. § 605(a).[14] Count II alleges that the Defendant intentionally intercepted, endeavored to intercept, or procured other persons to intercept or endeavor to intercept Direct Television's electronic communications without authorization, in violation of 18 U.S.C. 2511(1)(a).[15] Finally, Count III alleges that the Defendant manufactured, assembled, distributed, sold, and/or possessed pirate access devices, knowing or having reason to know that the design of such devices renders them primarily useful for surreptitiously intercepting satellite transmissions in violation of 18 U.S.C. § 2512(1)(b).[16]

The Defendant now moves this Court for an order dismissing the case for failure to state a claim upon which relief can be granted under 47 U.S.C. § 605(a) (Count I), 18 U.S.C. § 2511(1)(a) (Count II), and 18 U.S.C. § 2512(1)(b) (Count III).[17]

### III. THE DEFENDANT'S ARGUMENTS

The Defendant argues that this Court should dismiss Counts I and II of the

Complaint because although "47 U.S.C. § 605(a) and 18 U.S.C. § 2511(1)(a) permit private causes of action ... [the] Plaintiff has plead mere conclusory allegations as opposed to specific facts."[18] According to the Defendant, the "Plaintiff has not plead any connection between [the] Defendant's alleged purchase of this device ... and any facts that [the] Defendant actually used the device to obtain unauthorized reception and/or interception of Plaintiff's satellite transmission of television programming."[19] Nor, says the Defendant, has the Plaintiff "plead any connection to this Defendant and others whom he allegedly assisted in receiving and/or interpreting [Direct Television's] satellite transmission of television programming."[20] Likewise, the Defendant argues that Count III fails to state a claim upon which relief can be granted because "18 U.S.C. § 2512 does not provide [for] a private right of action."[21]

### IV. STANDARD OF REVIEW

In deciding a motion to dismiss, the court must accept as true all the factual allegations in the complaint, drawing all inferences derived from those facts in the light most favorable to the plaintiff. *Brown v. Crawford County*, 960 F.2d 1002, 1010 (11th Cir.1992). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to

12. *Id.*, ¶ 22(a) at 7; *see also id.*, ¶ 22 at 7,

13. *See generally id.*

14. *See id.*, ¶¶ 28–31 at 9.

15. *See id.*, ¶¶ 32–35 at 9–10.

16. *See id.*, ¶¶ 36–39 at 10–11.

17. *See generally* Defendant's, Antonio Cardona, Motion to Dismiss all Counts (Doc. No. 6); *see also* Defendant's, Antonio Cardona, Mem-

orandum of Law in Support of His Motion to Dismiss all Counts (Doc. No. 7).

18. Defendant's, Antonio Cardona, Motion to Dismiss all Counts (Doc. No. 6), ¶ 4 at 2.

19. *Id.*

20. *Id.* (internal quotation marks omitted).

21. *Id.*, ¶ 3 at 2.

offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *see also Little v. N. Miami*, 805 F.2d 962, 965 (11th Cir.1986). A count may not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of a claim for relief. *See Lopez v. First Union Nat'l Bank*, 129 F.3d 1186, 1189 (11th Cir.1997), *reh'g denied*, 141 F.3d 1191 (11th Cir. 1998), *cert. denied*, 531 U.S. 1052, 121 S.Ct. 656, 148 L.Ed.2d 559 (2000). The threshold of sufficiency for a complaint to survive a motion to dismiss is exceedingly low. *See Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 703 (11th Cir.1985). Nevertheless, dismissal is appropriate where a court cannot "identify each of the material elements necessary to sustain a recovery under some viable legal theory." *See Roe v. Aware Woman Ctr. for Choice, Inc.* 253 F.3d 678, 684 (11th Cir.2001), *reh'g denied*, 273 F.3d 395 (11th Cir.2001), *cert. denied*, 534 U.S. 1129, 122 S.Ct. 1067, 151 L.Ed.2d 970 (2002) (internal citation omitted). Moreover, a court should grant a motion to dismiss where the factual allegations in the plaintiff's complaint present a dispositive legal issue precluding relief. *See Marshall County Bd. of Educ. v. Marshall County Gas. Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

## V. LEGAL ANALYSIS

### A. THE MOTION TO DISMISS COUNTS I AND II

In Count I of the Complaint, the Plaintiff charges that the Defendant received Direct Television's satellite transmissions in violation of 47 U.S.C. § 605(a). In relevant part, that statute provides as follows:

(a) Practices Prohibited

[N]o person receiving, [or] assisting in receiving ... any interstate ... communication by wire ... shall divulge or publish the ... contents ... thereof, except through authorized channels of ... reception, (1) to any person other than the addressee, his agent, or attorney, (2) to a person employed or authorized to forward such communication to its destination, (3) to proper accounting or distributing officers of the various communication centers over which the communication may be passed, (4) to the master of a ship of whom he is serving, (5) in response to a subpoena issued by a court of competent jurisdiction, or (6) on demand of other lawful authority. No person not being authorized by the sender shall intercept any radio communication and divulge or publish the ... contents...of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents ... of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the ... contents ...of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

47 U.S.C. § 605(a).

Title 47 U.S.C. § 605(e)(3) provides that any "person aggrieved by any violation of subsection (a) ... may bring a civil action in a United States district court or in any other court of competent jurisdiction."

Similarly, in Count II of the Complaint, the Plaintiff charges that the Defendant intercepted Direct Television's satellite transmission in violation of 18 U.S.C. § 2511(1)(a). In relevant part, that statute provides as follows:

> [A]ny person who ... intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral or electronic communication ... shall be ... subject to suit.

18 U.S.C. § 2511(1)(a).

■ Having reviewed the allegations contained in the Complaint, this Court finds that the Plaintiff has properly averred a claim against the Defendant under both 47 U.S.C. § 605(a) and 18 U.S.C. § 2511(1)(a).

The Complaint alleges that the Plaintiff is in the business of providing television programming via satellite transmissions. *See* Doc. No. 2, ¶ 2 at 1–2. If further alleges that several entities have designed pirate access devices to receive and/or intercept its satellite transmissions without authorization. *See id.*, ¶ 14 at 4 ("satellite pirates have developed devices ... that employ hardware and software in combination ... to illegally circumvent [Plaintiff's] encryption protection and view [Plaintiff's] programming"). Finally, the Complaint avers that the Defendant has employed such devices to receive and/or intercept satellite transmissions without authorization. *See id.*, ¶ 18 at 5 ("Defendants [22] have purchased and used illegally modified ... access cards and other devices ...

that are designed to permit viewing of [Plaintiff's] programming without authorization or payment"); *see also id.*, ¶ 29 at 9 ("Defendants have received and/or assisted others in receiving [Plaintiff's] satellite transmission of television programming without authorization"); *id.*, ¶ 33 at 10 ("Defendants intentionally intercepted, endeavored to intercept, or procured other persons to intercept or endeavor to intercept [Plaintiff's] satellites transmission of television programing").

The fact that the Plaintiff has not plead any connection between the Defendant's alleged purchase of pirate accessing devices and his actual use of such devices to receive and/or intercept the Plaintiff's satellite transmission does not render the Plaintiff's causes of action deficient; drawing all inferences in the light most favorable to the Plaintiff, possession of equipment used to intercept satellite transmissions communications is evidence that satellite transmissions were in fact intercepted. *See Ages Group, L.P. v. Raytheon Aircraft Co., Inc.*, 22 F.Supp.2d 1310, 1315 (M.D.Ala.1998) ("proof of possession of equipment used to intercept oral communications could certainly be part of [Plaintiff's] proof that oral communications were intercepted"). As such, these allegations are sufficient to satisfy the liberal notice pleading standards under the Federal Rules of Civil Procedure.

## B. THE MOTION TO DISMISS COUNT III

### 1. *Generally*

In Count III of the Complaint, the Plaintiff charges that the Defendant pos-

---

**22.** When the Plaintiff's Complaint was initially filed it listed five Defendants in the caption of the case. *See* Doc. No. 2 at 1. Pursuant to this Court's order of May 22, 2003, however, the Defendants were severed on the grounds of improper joinder and new case numbers

were assigned accordingly. *See generally DIRECTV, Inc. v. Brown*, Case No. 6:03–cv–234–Orl–22KRS, Doc. No. 30 (M.D.Fla. May 22, 2003). The Complaint has not been amended since that time. Hence, the Plaintiff continues to speak in the plural.

sessed a pirate access device in violation of 18 U.S.C. § 2512(1)(b). That statute provides, in pertinent part, as follows:

> [A]ny person who intentionally . . . manufactures, assembles, possesses, or sells any . . . device, knowing or having reason to know that the design of such device renders it primarily useful for the purpose of the surreptitious interception of . . . electronic communications, and that such device . . . has been or will be sent through the mail or transported in interstate . . . commerce . . . *shall be fined under this title or imprisoned nor more than five years, or both.*

18 U.S.C. § 2512(1)(b) (emphasis added).

Although from its plain language § 2512(1)(b) is unquestionably a criminal statute, the Plaintiff claims that a private right of action exists for violations of 18 U.S.C. § 2512(1)(b) pursuant to 18 U.S.C. § 2520(a). In relevant part, 18 U.S.C. § 2520(a) reads as follows:

> "In general . . . any person[23] whose wire, oral, or electronic communication is *intercepted,*[24] *disclosed, or intentionally used* in violation of this chapter may in a civil action recover from the person . . . which engaged in that violation . . . "

18 U.S.C. § 2520(a) (emphasis added).

Thus, a "plaintiff may bring a civil action under section 2520 [for violations of the Wiretap Act] whether or not the defendant has been subject to a criminal prosecution for the acts complained of." S.Rep. No. 541, 99th Cong., 2d Sess., *reprinted in* 1986 U.S.Code Cong. & Admin. News

3555, 3581; *see also Oceanic Cablevision, Inc. v. M.D. Elecs.,* 771 F.Supp. 1019, 1027 (D.Neb.1991). In the absence of a "prosecution and conviction, [however,] it is the plaintiff's burden to establish that the requirements of this section are met." *Id.; see also Oceanic Cablevision,* 771 F.Supp. at 1027.

In accordance with this framework, the Court must now determine whether 18 U.S.C. § 2520(a) affords a private right of action for violations of 18 U.S.C. § 2512(1)(b).

### 2. The Law of Statutory Interpretation

In interpreting a statute, the starting point is the language of the statute itself. *See Gonzalez v. McNary,* 980 F.2d 1418, 1420 (11th Cir.1993) ("The starting point in statutory construction must be the language of the statute itself") (internal citation omitted); *see also Griffith v. United States (In re Griffith),* 206 F.3d 1389, 1393 (11th Cir.2000), *cert. denied,* 531 U.S. 826, 121 S.Ct. 73, 148 L.Ed.2d 37 (2000) ("Interpretation of a statute begins with the language of the statute itself") (internal citation and quotations omitted).

As a general rule, if the language of a statute is plain, then a court's interpretive function ceases, and it should enforce the statute according to its own terms. *See In re Griffith,* 206 F.3d at 1393; *see also United States v. McNab,,* 324 F.3d 1266, 2003 WL 1419848 (11th Cir.2003), *modified and reh'g denied,* 331 F.3d 1228 (11th Cir. 2003) (recognizing that when the words of

---

**23.** "As used in this chapter . . . 'person' means any employee, or agent of the United States or any State or political subdivision thereof, and any individual, partnership, association, joint stock company, trust, or corporation." 18 U.S.C. § 2510(6).

**24.** "As used in this chapter . . . 'intercept' means the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4).

**1364**

a statute are unambiguous, the judicial inquiry is complete); *Gonzalez*, 980 F.2d at 1420 ("The meaning of the statute must, in the first instance, be sought in the language in which the action is framed, and if that is plain ... the sole function of the courts is to enforce it according to its terms") (internal citations and quotations omitted).

■ A court may only look to evidence of Congressional intent outside the four corners of a statute if: "(1) the statute's language is ambiguous; (2) applying it [the statute] according to its plain meaning would lead to an absurd result; or (3) there is clear evidence of contrary legislative intent." *Moore v. Am. Fed'n of Television & Radio Artists*, 216 F.3d 1236 (11th Cir.2000), *reh'g, en banc, denied*, 247 F.3d 251 (11th Cir.2001), *cert. denied*, 533 U.S. 950, 121 S.Ct. 2592, 150 L.Ed.2d 751 (2001) (internal citations and quotations omitted); *McNab,*, 324 F.3d 1266, 2003 WL 1419848 n. 14 (accord).

### 3. Application

While the Eleventh Circuit has never considered whether a private cause of action exists under 18 U.S.C. § 2520(a) for violations of 18 U.S.C. § 2512(1)(b), this Court's research reflects that at least one United States Court of Appeals,[25] and five United States district courts have addressed the issue.[26] In that regard, three

have determined that § 2520(a) is applicable to violations of § 2512(1)(b),[27] and three have determined otherwise.[28]

The most prominent case speaking on the issue is *Flowers v. Tandy Corp.*, 773 F.2d 585 (4th Cir.1985). In *Flowers*, the plaintiffs brought a private cause of action against the defendant for selling a device primarily useful for surreptitiously intercepting wire communications in violation of 18 U.S.C. § 2512(1)(b). *See id.* at 586. In response, the defendant moved for a directed verdict arguing that conduct violating § 2512(1)(b) cannot form a basis for liability under § 2520. *See id.* at 588. At trial, the United States District Court for the District of South Carolina denied the motion for a directed verdict; however, on appeal, the Fourth Circuit Court of Appeals reversed, holding as follows:

> Looking first to the language of the statute, we find no merit in appellees' assertion that § 2520 expressly provides a private cause of action for violations of the criminal proscriptions of § 2512. Though § 2520 provides an action for any person whose communication is intercepted, disclosed or used *in violation of this chapter* ... the language defining the class of persons liable is not comparably broad. The statute expressly limits those against whom the private action lies to the person who intercepts, dis-

---

**25.** *See Flowers v. Tandy Corp.*, 773 F.2d 585, 588–89 (4th Cir.1985), *superceded by statute as stated in Peavy v. WFAA–TV, Inc.*, 221 F.3d 158, 168–70 (5th Cir.2000).

**26.** *See DirecTV v. Karpinsky*, 269 F.Supp.2d 918, 926 (E.D.Mich.2003); *DIRECTV, Inc. v. Calamanco*, Case No. C 02–4102–MWB, 2003 WL 21956187, *3–4 (N.D.Iowa, Jan. 21, 2003); *DIRECTV, Inc. v. EQ Stuff, Inc.*, 207 F.Supp.2d 1077, 1084 (C.D.Cal.2002); *Ages Group, L.P. v. Raytheon Aircraft Co., Inc.*, 22 F.Supp.2d 1310, 1315 (M.D.Ala.1998);

*Oceanic Cablevision, Inc. v. M.D. Elecs.*, 771 F.Supp. 1019, 1025–29 (D.Neb.1991).

**27.** *See Calamanco*, Case No. C 02–4102–MWB, 2003 WL 21956187 at *3–4; *EQ Stuff, Inc.*, 207 F.Supp.2d at 1084; *Oceanic Cablevision, Inc.*, 771 F.Supp. at 1025–29.

**28.** *See Flowers*, 773 F.2d at 588–89; *Karpinsky*, 269 F.Supp.2d 918, 926; *Ages Group, L.P.*, 22 F.Supp.2d at 1315.

closes, or uses, or procures any other person to intercept, disclose, or use such communications. This language tracks very closely the criminal offense set out in § 2511, whereas the criminal offenses set out in § 2512 are defined in such terms as manufacture, assemble, possess, and sell. The express language of § 2520 is therefore not susceptible to a construction which would provide a cause of action against one who manufactures or sells a device in violation of § 2512 but does not engage in conduct violative of § 2511.

*Id.* at 588–589 (internal citation and quotations omitted) (emphasis in the original).

Although the Wiretap Act was amended shortly after *Flowers* was decided,[29] at least two district courts have since concluded that actions based on violations of 18 U.S.C. § 2512(1)(b) fall outside of the purview of the private right of action afforded under § 2520(a).

In *DirecTV v. Karpinsky*, for instance, where the plaintiff alleged that the defendant possessed a device capable of receiving and decrypting plaintiff's satellite broadcast signal in violation of 18 U.S.C. § 2512, the United States District Court for the Eastern District of Michigan granted the defendant's motion for summary judgment because "mere possession ... is insufficient to support a finding of liability" under § 2520(a). 269 F.Supp.2d 918, 926 (E.D. Mich.2003).

Likewise, in *Ages Group, L.P. v. Raytheon Aircraft Co., Inc.*, where the plaintiff alleged that the defendant possessed surveillance equipment in violation of 18 U.S.C. § 2512, the United States District Court for the Middle District of Alabama entered summary judgment in favor of the defendant because "possession of equipment will not support a separate claim" under 18 U.S.C. § 2520(a). 22 F.Supp.2d 1310, 1315 (M.D.Ala.1998). In that connection, the Middle District of Alabama reasoned:

Although [the plaintiff] has pointed to two separate violations of the federal statute [the Wiretap Act], to receive damages, [the plaintiff's] claims must be for conduct which falls within the private right of action in § 2520. Section 2520 provides that any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of the statute may recover in a civil action from the person or entity which engaged in that violation such relief as may be appropriate ... Therefore, even if [the plaintiff] showed that there is a material question of fact as to whether [the defendant] possessed equipment which it knew or reasonably

**29.** At the time *Flowers* was decided, 18 U.S.C. § 2520 provided, in pertinent part, as follows:
Any person whose wire or oral communications is intercepted, disclosed, or used in violation of this chapter shall (1) have a civil cause of action against any person who intercepts, discloses, or uses, or procures any other person to intercept, disclose, or use such communications, and (2) be entitled to recover from any such person ...
18 U.S.C. § 2520 (as amended by Pub.L. 91–358, Title II, § 211(c), July 29, 1970); *see also Flowers*, 773 F.2d at 588 n. 2; *Oceanic Ca-*

*blevision, Inc. v. M.D. Elecs.*, 771 F.Supp. 1019, 1026 (D.Neb.1991).
In its current form, 18 U.S.C. § 2520(a) provides, in pertinent part, as follows:
In general ... any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity, other than the United States, which engaged in that violation such relief as may be appropriate.
18 U.S.C. § 2520(a).

**1366**

should have known was designed primarily for surreptitious acquisition of communications under § 2512, [the plaintiff] must also create a question of fact as to whether communications were intercepted, disclosed, or intentionally used ... In other words, a plaintiff does not have a private right of action against a defendant based on evidence that the defendant possessed surveillance equipment within the meaning of the statute. While proof of possession of equipment used to intercept oral communications could certainly be part of [the plaintiff's] proof that oral communications were intercepted, *possession of equipment will not support a separate claim* against [the defendant].

*Id.* (emphasis added).

Conversely, at least three district courts have rejected *Flowers* and its progeny, finding that a private cause of action does exist under 18 U.S.C. § 2520(a) for violations of 18 U.S.C. § 2512(1)(b). *See, e.g., DirecTV, Inc. v. Calamanco,* Case No. C 02–4102–MWB, 2003 WL 21956187, *3–4 (N.D.Iowa, Jan. 21, 2003) (holding that plaintiff stated a valid cause of action under § 2520(a) for an alleged violation of § 2512(1)(b) where the complaint alleged that the defendants purchased by mail, possessed, and/or used equipment capable

of receiving and decrypting plaintiff's satellite broadcast signal without permission from or payment to plaintiff); *DIRECTV, Inc. v. EQ Stuff, Inc.,* 207 F.Supp.2d 1077, 1084 (C.D.Cal.2002) (holding that plaintiff stated a valid cause of action under § 2520(a) for an alleged violation of § 2512(1)(b) where the complaint alleged that the defendants sold illegal devices, via the Internet, which allowed for the pirating of the plaintiff's satellite signals); *Oceanic Cablevision, Inc. v. M.D. Elecs.,* 771 F.Supp. 1019, 1025–1029 (D.Neb.1991) (holding that plaintiff stated a valid cause of action under § 2520(a) for an alleged violation of § 2512(1)(b) where the complaint alleged that the defendants sold equipment capable of receiving and decrypting plaintiff's cable signals for non-paying cable subscribers).

Most notable of those decisions is *Oceanic Cablevision, Inc.,* wherein the United States District Court for the District of Nebraska concluded that a private right of action exists under § 2520(a) for the sale of pirate access devices in violation § 2512(1)(b) because "the 1986 amendments to §§ 2510–2521 broadened § 2512 to prohibit the selling of devices capable of use in the surreptitious acquisition of electronic communications."[30] 771 F.Supp. at 1028. According to that court, the "1986

**30.** Prior to the 1986 amendments, 18 U.S.C. § 2512 provided as follows:
(1) Except as otherwise specifically provided in this chapter, any person who willfully–
(a) *sends through the mail, or sends or carries in interstate or foreign commerce,* any electronic, mechanical, or other device, knowing or having reason to know that the design of such device renders it primarily useful for the purpose of the surreptitious interception of wire or oral communications;
(b) manufactures, assembles, possesses, or sells any electronic, mechanical, or other

device, knowing or having reason to know that the design of such device renders it primarily useful for the purpose of the surreptitious interception of wire or oral communications, and that such device or any component thereof has been or will be sent through the mail or transported in interstate or foreign commerce . . .
shall be fined not more than $10,000 or imprisoned not more than five years, or both. 18 U.S.C. § 2512 (Pub. Law 91–351, Title III, § 802 June 19, 1968); *see also Flowers,* 773 F.2d at 588 n. 3.

amendments to §§ 2512(1)(a)-(b) extended the statute's scope to prohibit the selling of devices capable of being used in the interception of electronic communications." *Id.* at 1028 (internal citation omitted).

■ Having reviewed the Wiretap Act together with the relevant amendments thereto and the aforementioned case law interpreting such, this Court finds the reasoning in *Flowers* more persuasive than that in *Oceanic Cablevision, Inc.* While the Wiretap Act's amendments may have broadened the criminal proscriptions in 18 U.S.C. § 2512(1)(b), it can be stated with relative ease that such amendments did not expand the conduct subjecting individuals to civil liability under § 2520(a). In other words, although manufacturing, assembling, possessing, and selling satellite decrypters might now be criminally sanctioned under 18 U.S.C. § 2512(1)(b)[31], as § 2520(a) presently reads, such conduct does not subject a person to civil liability.

As stated in *Flowers,* the plain and unambiguous language of § 2520(a) limits those against whom a civil action lies to persons who intercept, disclose, or use electronic communications; that class of persons does not include manufacturers, assemblers, possessors, and sellers of satellite decrypters. *See Flowers,* 773 F.2d at 588–589. As such, the Plaintiff's claim under § 2512(1)(b) of the Wiretap Act must be dismissed with prejudice. To recognize a cause of action in this instance would be tantamount to denying the language of § 2520(a) its ordinary meaning.

### 4. The Propriety of an Implied Right of Action

■ In *Cort v. Ash,* the United States Supreme Court set forth four factors ("the Cort test") a court should consider in determining whether a private right of action is implicit in a statute not expressly providing one. *See Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975); *see also McDonald v. S. Farm Bureau Life Ins. Co.,* 291 F.3d 718, 722 (11th Cir. 2002).

First, a court should analyze whether the plaintiff is a member of the class for whose especial benefit the statute was enacted; that is, did the statute create a federal right in favor of the plaintiff? *See Cort,* 422 U.S. at 78, 95 S.Ct. 2080. Second, there should be a determination as to whether the legislative intent, either explicitly or implicitly, indicates a desire to create such a remedy. *See id.* Third, a court must examine whether creation of such a remedy is consistent with the underlying purposes of the legislation. *See id.* And finally, there should be some investigation as to whether the cause of action is one traditionally related to state law so that it would be inappropriate to infer a cause of action based solely on federal law. *See id.*

In its current form, 18 U.S.C. § 2512(1)(b) provides, in pertinent, part, as follows:
[A]ny person who intentionally ... manufactures, assembles, possesses, or sells any ... device, knowing or having reason to know that the design of such device renders it primarily useful for the purpose of the surreptitious interception of ...electronic communications, and that such device ...has been or will be sent through the mail or transported in interstate ... commerce ... shall be fined under this title or imprisoned nor more than five years, or both.
18 U.S.C. § 2512(1)(b).

31. *See United States v. McNutt,* 908 F.2d 561, 564–65 (10th Cir.1990), *cert. denied,* 498 U.S. 1084, 111 S.Ct. 955, 112 L.Ed.2d 1043 (1991) (recognizing that the sale of satellite television decrypters is a violation of § 2512(1)(b)).

As evidenced by these factors, the "central inquiry in the Cort analysis is whether Congress intended to create ... a private cause of action." *McDonald*, 291 F.3d 718 at 723 (internal citations and quotations omitted) (emphasis added); *see also Love v. Delta Air Lines*, 310 F.3d 1347, 1351–1352 (11th Cir.2002) (noting that the touchstone of its private right of action analysis is legislative intent). In that connection, the United States Supreme Court recently stated as follows:

> Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress. The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy. Statutory intent ... is determinative. Without it, a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute. Raising up causes of action where a statute has not created them may be a proper function for common-law courts, but not for federal tribunals.

*Alexander v. Sandoval*, 532 U.S. 275, 286–287, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001).

■ Applying the aforementioned principles to the case at hand, this Court finds that a private action cannot be implied from § 2512(1)(b) of the Wiretap Act.

Foremost, there is no significant evidence indicating that 18 U.S.C. § 2512(1)(b) was enacted solely for the especial benefit of the plaintiff. Although "any criminal statute is in part enacted for the benefit of the victims of the crime ... § 2512 appears to have been designed for benefitting the *public as a whole* by removing such devices from the market." *Flowers v. Tandy*, 773 F.2d 585, 589 (4th Cir.1985) (internal citations and quotations omitted) (emphasis added). To the contrary, "[s]ection 2511, which makes criminal the actual practice of [intercepting wire, oral, or electronic communication], is more properly aimed at protecting the particular victim, and indeed, Congress recognized that purpose by expressly providing in § 2520 a private cause of action for victims of acts made criminal in § 2511." *Id.*

Second, 18 U.S.C. § 2512(1)(b) already provides for an enforcement mechanism through criminal sanctions. *See* 18 U.S.C. § 2512(1)(b) (noting that violators of this provisions shall be "fined ... or imprisoned not more than five years, or both"). This is problematic because the express provision of one method of enforcement suggests that Congress intended to preclude others. *See Love*, 310 F.3d at 1353 (11th Cir.2002); *see also McDonald*, 291 F.3d at 725 (noting that it is "an elemental canon of statutory construction that where a statute expressly provides a remedy, courts must be especially reluctant to provide additional remedies") (internal citations and quotations omitted). In fact, this "suggestion is 'sometimes ... so strong that it precludes a finding of congressional intent to create a private right of action, even though other aspects of the statute (such as language making the would-be plaintiff a member of the class for whose benefit the statute was enacted') suggests the contrary." *Love*, 310 F.3d at 1353 (quoting *Sandoval*, 532 U.S. at 290, 121 S.Ct. 1511).

And finally, because § 2520(a) includes the particular language of the criminal offenses set forth in § 2511(1)(a), and ex-

cludes the language later employed in § 2512(1)(b) (e.g. "manufactures," "assembles," "possesses," and "sells") construing § 2520(a) to exclude from its private right of action the conduct proscribed in § 2512(1)(b) is consistent with the cannon of construction that where "Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *United States v. Saunders,* 318 F.3d 1257, 1264 (11th Cir.2003) (internal citations and quotations omitted); *see also Burton v. Tampa Hous. Auth.,* 271 F.3d 1274, 1279 (11th Cir.2001), *cert. denied,* 535 U.S. 1053, 122 S.Ct. 1910, 152 L.Ed.2d 820 (2002) ("Abiding by another canon of statutory construction, where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion") (internal citations and quotations omitted); *Flowers v. Tandy Corp.,* 773 F.2d 585, 588–589 (4th Cir.1985) (holding that the express language of § 2520 is not susceptible to a construction which would provide a cause of action against one who manufactures or sells a device in violation of § 2512 because the language of § 2520 "tracks very closely the criminal offenses set out in § 2511, whereas the criminal offenses set out in § 2512 are defined in such terms as 'manufacture,' 'assemble,' 'possess,' and 'sell' ").

"Because the question of legislative intent is the central inquiry in this analysis ... [this] ... conclusion is unaffected by the fact that, under the fourth Cort factor, implying a private cause of action would not offend basic principles of federalism." *McDonald,* 291 F.3d at 725 (internal cita-

tions and quotations omitted); *see also Florida v. Seminole Tribe of Fla.,* 181 F.3d 1237, 1247 (11th Cir.1999) ("Thus, when an examination of one or more of the *Cort* factors 'unequivocally reveals congressional intent[,] there is no need for us to trudge through all four of the factors' ") (quoting *Liberty v. Nat'l Ins. Holding Co. v. Charter Co.,* 734 F.2d 545, 558 (11th Cir.1984)).

## VI. CONCLUSION

Based on the foregoing, it is **ORDERED** that:

1. The Defendant's, Antonio Cardona, May 22, 2003 Motion to Dismiss (Doc. No. 6) is **GRANTED IN PART** and **DENIED IN PART**.

   (a) The Motion to Dismiss (Doc. No. 6) Count I of the Complaint (Doc. No. 2) for unauthorized reception of satellite signals in violation of 47 U.S.C. § 605(a) is **DENIED**.

   (b) The Motion to Dismiss (Doc. No. 6) Count II of the Complaint (Doc. No. 2) for unauthorized interception of electronic communications in violation of 18 U.S.C. § 2511(1)(a) is **DENIED**.

   (c) The Motion to Dismiss (Doc. No. 6) Count III of the Complaint (Doc. No. 2) for manufacturing, assembling, distributing, selling and/or possessing pirate access devices in violation of 18 U.S.C. § 2512(1)(b) is **GRANTED**. Count III is hereby **DISMISSED WITH PREJUDICE**.

2. The Plaintiff, Direct Television, is given leave to file an Amended Complaint on or before Friday, July 25, 2003, eliminating the claim for manufacturing, assembling, distributing, selling and/or possessing pirate access devices in violation of 18 U.S.C. § 2512(1)(b).