**DIRECTV, INC., Plaintiff/Counter–Defendant,**

v.

**Brian VANDERHOEK, Defendant/Counter–Plaintiff and Third Party Plaintiff,**

v.

**Hughes Electronics, Third Party Defendant.**

**No. 1:02–CV–889.**

United States District Court,
W.D. Michigan,
Southern Division.

Feb. 2, 2004.

Angela M. Brown/Brigham Cook Smith/Janice Keays Smith, for Plaintiff.

Fredrick W. Jensen, Jr., for Defendant.

## *OPINION*

QUIST, District Judge.

Plaintiff, DIRECTV, Inc. ("DIRECTV"), has sued Defendant, Brian VanderHoek ("VanderHoek"), alleging that he violated the Federal Communications Act of 1934, 47 U.S.C. § 605, the Omnibus Crime Control and Safe Streets Act of 1968, as amended by the Electronic Communications Privacy Act of 1986, and the Communications Assistance for Law Enforcement Act of 1994, 18 U.S.C. §§ 2510–22 (the "Wiretap Act"), and Michigan common law by purchasing and using access cards and other devices ("Pirate Access Devices") to decrypt, receive, and view DIRECTV's encrypted satellite transmissions of television programming. DIRECTV seeks injunctive relief, statutory damages, or, in the alternative, compensatory and punitive damages, attorney fees and costs. Now before the Court is VanderHoek's motion for summary judgment.

## I. *Facts*

DIRECTV is one of the nation's largest providers of satellite television programming. DIRECTV delivers its broadcasts throughout the United States to customers who have paid a subscription fee. In order to receive the broadcasts, a DIRECTV subscriber must possess a satellite dish, an integrated receiver/decoder, and an access card to unscramble the signals. DIRECTV provides this equipment to its subscribers either for free or for a small fee. The access card, otherwise known as an ISO-7816 compliant smart card, is roughly the size of a credit card and contains a small microprocessor chip that is inserted into a DIRECTV receiver. DIRECTV programs the subscriber's access card with data corresponding to the subscriber's level of service. In other words, the cards are electronically programmed to block or unblock television channels and specific programs to include only the programming for which the subscriber has paid.

In spite of DIRECTV's efforts to prevent unauthorized reception and use of its programming, individuals have sought to illegally decrypt and intercept DIRECTV's signal without authorization by use of various Pirate Access Devices. Although Pirate Access Devices vary in type, they essentially allow the user to modify the access card to circumvent DIRECTV's security measures and decode its satellite signals.

On May 25, 2001, DIRECTV executed writs of seizure at the mail shipping facility used by several major suppliers of Pirate Access Devices, including Vector Technologies; DSS–Stuff; Shutt, Inc.; Intertek; WhiteViper; and DSS–Hangout (the "Suppliers"). Among other things, DIRECTV obtained shipping records, email communications, and credit card receipts identifying purchasers, or end-users, of illegal Pirate Access Devices from the Suppliers. DIRECTV used that information to obtain settlements (including monetary payments, stipulated injunctive relief, and turnover of the devices) from end-users or, failing a settlement, to sue end-users in federal court. This is one of perhaps thousands of suits DIRECTV has filed throughout the country against end-users.

In September 2000, VanderHoek purchased a WTX Chip Upgrade ("Chip") from WhiteViper Technologies. (Compl.¶ 7(a); VanderHoek Dep. at 20–22, Pl.'s Br. Opp'n Ex. 2.) VanderHoek testified that he purchased the Chip for a robotic arm he was helping a friend build. (*Id.* at 20.) VanderHoek testified that after he received the Chip he gave it to his friend for the project, which was never successful. (*Id.* at 22.) At the time VanderHoek purchased the Chip, he possessed all of the equipment needed to receive DIRECTV's satellite signals. (*Id.* at 16.) VanderHoek claims that he has never engaged in satellite signal theft. (*Id.* at 24.)

## II. *Summary Judgment Standard*

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R.Civ.P. 56. Material facts are facts which are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Financial Corp. v. Van Sickle,* 967 F.2d 233, 236 (6th Cir.1992) (quoting *Matsushita Elec.*

*Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

## III. *Discussion*

In its complaint, DIRECTV asserts four separate claims, including: (1) unauthorized reception of satellite signals in violation of 47 U.S.C. § 605(a); (2) unauthorized interception of satellite communications in violation of 18 U.S.C. § 2511(1)(a); (3) possession of pirate access devices in violation of 18 U.S.C. 2512(1)(b)[1]; and (4) conversion. DIRECTV has stated that it will not pursue the third and fourth claims against VanderHoek and that those claims should be considered withdrawn. (Pl.'s Br. Opp'n Def.'s Mot. at 8 n. 2.) Thus, the only claims before the Court are DIRECTV's claims under 47 U.S.C. § 605(a) and 18 U.S.C. § 2511(1)(a).

VanderHoek has moved for summary judgment on the ground that DIRECTV has failed to create a genuine issue of material fact as to the alleged violations of 47 U.S.C. § 605(a) and 18 U.S.C. § 2511(1)(a). VanderHoek further argues that DIRECTV has failed to state a claim under 18 U.S.C. § 2511(1)(a).[2]

### A. Motion For Summary Judgment

#### 1. Violation Of 47 U.S.C. § 605(a)

In its first claim, DIRECTV alleges that VanderHoek received and assisted others in receiving DIRECTV's satellite transmissions in violation of 47 U.S.C. § 605(a). That provision states, in pertinent part:

[N]o person receiving, assisting in receiving, transmitting, or assisting in

transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception, (1) to any person other than the addressee, his agent, or attorney, (2) to a person employed or authorized to forward such communication to its destination, (3) to proper accounting or distributing officers of the various communicating centers over which the communication may be passed, (4) to the master of a ship under whom he is serving, (5) in response to a subpena [sic] issued by a court of competent jurisdiction, or (6) on demand of other lawful authority. No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence,

---

1. This claim is actually denominated as possession of pirate access devices in violation of 18 U.S.C. § 2511(1)(b) but the Court understands this claim to be based upon § 2512(1)(b) in light of the references to § 2512(1)(b) in the body of the claim as well as the Court's review of the statutes.

2. VanderHoek also raises the same arguments in his motion with regard to DIRECTV's claims under 18 U.S.C. § 2512. However, the Court need not address those arguments because, as noted, DIRECTV has expressly withdrawn its claim based upon § 2512. Therefore, that claim and the conversion claim will be dismissed with prejudice.

contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. This section shall not apply to the receiving, divulging, publishing, or utilizing the contents of any radio communication which is transmitted by any station for the use of the general public, which relates to ships, aircraft, vehicles, or persons in distress, or which is transmitted by an amateur radio station operator or by a citizens band radio operator.

47 U.S.C. § 605(a). Any person aggrieved by a violation of subsection (a) may bring a civil action in federal court. 47 U.S.C. § 605(e)(3)(A). In order to prevail on its claim under this section, DIRECTV must prove that VanderHoek received, assisted in receiving, or intercepted DIRECTV satellite transmissions. *See DirecTV, Inc. v. Moreno*, No. 03–2478(JEI), 2003 WL 22927883, at *2 (D.N.J. Dec.11, 2003); *DirecTV, Inc. v. Karpinsky*, 269 F.Supp.2d 918, 926 (E.D.Mich.2003), *vacated in part upon reconsideration*, 274 F.Supp.2d 918 (E.D.Mich.2003); *Joe Hand Promotions, Inc. v. Rennard Street Enters., Inc.*, 975 F.Supp. 746, 753 (E.D.Pa.1997).

VanderHoek contends that he is entitled to summary judgment because DIRECTV has failed to offer any evidence showing that VanderHoek used the pirate device to actually receive or intercept DIRECTV's signal. In support of his argument, VanderHoek relies heavily upon *V Cable, Inc. v. Guercio*, 148 F.Supp.2d 236 (E.D.N.Y. 2001), which VanderHoek asserts is on point with this case. In *V Cable*, the plaintiff alleged that the defendant violated 47

U.S.C. § 605(a) by purchasing and using or distributing pirate cable descrambling devices. The court held that the plaintiff failed to show that it was an "aggrieved party" entitled to bring an action for violation of § 605(a) because there was no evidence that the defendant distributed or used the pirate devices within the plaintiff's market area or elsewhere. The court stated:

> A perusal of the statutes underlying the present action indicates that it is not a crime, nor a basis for a civil claim, for an individual to purchase or possess pirate descrambling devices, even if it appears that possession is with the intent to distribute. . . .
>
> .    .    .    .    .
>
> Cablevision concedes that it has no direct evidence that defendant either used or distributed any of the items purchased from either Global or J.E.S. Moreover, it has offered no evidence, such as unexplained bank deposits in amounts suggesting he was selling descramblers, or other circumstantial evidence of sale.

*Id.* at 242–43. In addition, the court held that the plaintiff failed to show that the defendant used one or more of the descramblers. The court observed that there was no evidence that the defendant decreased the level of his cable service following his receipt of the descramblers, which "arguably would be some evidence of his usage of an illegal device," and there was no testimony from the defendant, his family members, or neighbors, that they viewed programming beyond that covered by the defendant's subscription. *Id.* at 244–45. VanderHoek contends that as in *V Cable*, there is no evidence that he actually received DIRECTV programming.[3]

---

**3.** On January 30, 2004, VanderHoek filed a Notice of Supplemental Authority attaching copies of thirteen opinions and/or orders from other district courts in various DIRECTV

cases. The bulk of the opinions and/or orders dealt with the issue of whether DIRECTV may maintain a claim for violation of 18 U.S.C.

DIRECTV counters that *V Cable* is inapposite to this case because it was not, as VanderHoek claims, a summary judgment opinion, but instead was the district court's findings of fact and conclusions of law after a trial. In addition, DIRECTV contends that *V Cable* is distinguishable because the plaintiff in *V Cable* relied solely upon evidence that the defendant purchased pirate cable devices, whereas DIRECTV has presented substantially more evidence of VanderHoek's pirate activities. DIRECTV contends that the opinions in *DirecTV v. Karpinsky* show that DIRECTV has presented more than sufficient evidence to survive VanderHoek's motion for summary judgment. In *Karpinsky*, the defendant moved for summary judgment based upon his testimony that he was not and never had been a DIRECTV subscriber and that he did not possess the satellite dish and receiver required to receive DIRECTV's satellite transmissions. *DirecTV v. Karpinsky*, 269 F.Supp.2d 918, 926 (E.D.Mich.2003). DIRECTV failed to offer evidence rebutting the defendant's evidence, however, it opposed the motion by citing (1) the defendant's purchase and possession of two "Smartcard Recovery System" devices in 2001; (2) statements by DIRECTV's vice president to the effect that the devices had no legitimate personal or commercial use, other than to assist in the interception and decryption of DIRECTV signals; and (3) statements by the vice president that anyone who visited the website of the company from which the defendant purchased the device would know that the devices were advertised primarily for use in illegal reception of DIRECTV's signals. The court concluded that while DIRECTV's evidence raised a possible inference that the defendant possessed the devices knowing that they were primarily used to unlawfully intercept DIRECTV signals, a reasonable fact-finder could not infer that the defendant unlawfully intercepted DIRECTV's signals in light of the evidence that the defendant was not a DIRECTV subscriber and did not possess the equipment needed to intercept the signals. *Id.* at 927. Shortly after the court granted summary judgment to the defendant, DIRECTV moved for reconsideration, citing evidence indicating that the defendant had

§ 2512 based upon mere possession of a Pirate Access Device. Those opinions and orders are not relevant to the issues in these cases in light of DIRECTV's express withdrawal of its claim under § 2512. Only two of the cited opinions addressed DIRECTV's claim under § 2511 for actual interception. The first, an order from the Eastern District of North Carolina, held that DIRECTV is not entitled to bring a claim under 18 U.S.C. § 2520 based upon a violation of § 2511 because the damages provision, subsection (c), provides for damages only where the defendant views a satellite video transmission that is not scrambled or encrypted. The Court disagrees with this conclusion because subsection (c)(2) provides for actual or statutory damages "[i]n any other action," which would include the situation here, where the satellite signal is scrambled or encrypted. *See* 18 U.S.C. § 2520(c)(2). The second opinion and order pertaining to a DIRECTV claim under § 2511 is the opinion in *DIRECTV, Inc.*

*v. Cavanaugh*, NO. 03–60001 (E.D.Mich. Nov. 18, 2003). The opinion in *Cavanaugh* does not help VanderHoek, because the court in that case held that DIRECTV's circumstantial evidence was sufficient to defeat the defendant's motion for summary judgment. The defendant denied that he used the device to intercept DIRECTV's signal. DIRECTV's evidence was that: (1) the defendant was a DIRECTV subscriber; (2) the defendant purchased a pirate device; (3) the defendant's account history with DIRECTV showed decreases in subscription to premium channels or movies that corresponded with the dates of purchase of the pirate devices; and (4) the defendant complained of equipment failure that likely resulted from illegal tampering. The court held that the evidence "support[ed] the reasonable inference that signal theft did in fact occur." *DIRECTV, Inc. v. Cavanaugh*, No. 03–60001, slip op. at 9 (E.D.Mich. Nov. 18, 2003).

in fact purchased a DIRECTV system and therefore had the ability to intercept DIRECTV's signals. *DirecTV v. Karpinsky,* 274 F.Supp.2d 918, 921 (E.D.Mich.2003). The court granted the motion because it found that based upon the new evidence, a reasonable fact-finder could infer that the defendant did in fact unlawfully intercept or aid in intercepting DIRECTV's signals using the devices. *Id.* DIRECTV contends that the *Karpinsky* opinions, considered together, implicitly support the proposition that a defendant's purchase of a Pirate Access Device, coupled with evidence of the defendant's purchase or possession of a DIRECTV satellite system, is sufficient to withstand a motion for summary judgment.

■ A plaintiff need not produce direct evidence to establish that a communication was received or intercepted, but may rely upon circumstantial evidence to do so. *See Walker v. Darby,* 911 F.2d 1573, 1578 (11th Cir.1990) (holding that circumstantial evidence may be used to prove a wiretap claim, including actual interception). In *Ages Group L.P. v. Raytheon Aircraft Co., Inc.,* 22 F.Supp.2d 1310 (M.D.Ala.1998), the court found that the plaintiff presented sufficient evidence to survive the defendant's motion for summary judgment. The defendant argued that the evidence showed that there was only video surveillance, which was not illegal, without interception of the contents of any communications. Although the court stated that "proof of possession of equipment used to intercept oral communications could certainly be part of [the plaintiff's] proof that oral communications were intercepted," the claim survived because there was other substantial evidence, including eyewitness testimony showing that the defendant's employees were using listening devices. *Id.* at 1316. The court rejected the defendant's argument that even if its agents possessed equipment capable of intercepting communications, there was no evidence

that the communications were actually intercepted. The court noted that the circumstantial evidence established that the agents possessed equipment consistent with monitoring and receiving oral communications and that one of the agents was observed wearing a headset which would only be used if the microphone and recorder were being used. *Id.* at 1318–19.

In *Gross v. Taylor,* No. Civ. A. 96–6514, 1997 WL 535872 (E.D.Pa. Aug.5, 1997), two police officers sued the police chief, two sergeants, the police department, and others alleging, among other things, violations of the federal and state wiretap laws. The police department had installed audiovisual surveillance systems in certain patrol cars for the purposes of collecting evidence and protecting the police from liability. The systems included a microphone which was installed in the back seat of the car. The existence of the rear-seat microphone was apparently not disclosed to the officers during the training session for use of the system. Prior to the training, the plaintiffs discovered the existence of the rear-seat microphones, but they did not share the information with their supervisors until almost a month later, when another officer discovered that his system recorded sound as well as video. The police department removed the rear-seat microphones within two days of learning of their existence. The court held that the defendants were entitled to summary judgment on the wiretap claims because, among other things, the plaintiffs failed to present evidence establishing an actual interception. In its analysis, the court found or assumed that both plaintiffs established that they used a patrol car which was equipped with a rear-seat microphone during the relevant time period and that the system was capable of recording sounds. *Id.* at *5. However, the court concluded that such evidence was insufficient to create a genuine issue of fact about whether

there was an actual interception because the plaintiffs failed to "present[ ] any evidence substantiating any claim beyond that they were in cars with systems capable of recording." *Id.* The court acknowledged the difficulties a plaintiff faces in proving a wiretap claim and that because of those difficulties courts have held that direct evidence of specific conversations is not necessary, but it observed that those cases do not allow a plaintiff to establish a claim upon "the barest of circumstantial evidence." *Id.* at *6. The court noted that in cases allowing proof by circumstantial evidence, the evidence was "substantial" and included "statements by the defendants to third parties that they engaged in wiretapping, evidence of targeting the plaintiffs for bugging by installing a microphone in his or her office, actual tapes of intercepted conversations, evidence of a pattern of wiretapping, and testimony that the defendant was remotely monitoring the plaintiff." *Id.* The court concluded that summary judgment was appropriate, given the absence of such evidence in that case.

*Ages Group* and *Gross* both establish that it is not enough for a plaintiff merely to show that a defendant possessed equipment capable of intercepting a communication in order to show that the defendant actually received or intercepted the plaintiff's communication. Rather, the plaintiff must produce circumstantial evidence sufficient to support the conclusion that there was an actual interception.

■ DIRECTV contends that its evidence is sufficient to create a genuine issue as to whether VanderHoek used the Chip, along with other pirate devices, to receive DIRECTV's signal. DIRECTV points out that VanderHoek admitted in his deposition that he possessed the necessary equipment to receive DIRECTV's signal. DIRECTV also contends that VanderHoek's purchase of the Chip is evidence that he intended to use it to decrypt and receive DIRECTV's signal. DIRECTV's expert, Bill Gatliff, has stated that the Chip is intended to be plugged into an unlooper, which is a pirate access device designed for the sole purpose of altering DIRECTV access cards. Gatliff also states that the Chip was encoded with WTX code, or software designed for the sole purpose of facilitating the unlawful interception of DIRECTV's signals by disabling the security features on the access card. In addition, Gatliff states that VanderHoek's story is not credible because VanderHoek paid $99 for the Chip when he could have purchased a blank Atmel chip from dozens of online retailers for less than $5. Finally, Gatliff states that a chip coded with WTX code would be useless for any robotics application. DIRECTV also points out that VanderHoek admitted that he paid $75 for a "premium" annual membership to Decoder News, an internet forum which provided information on software used in DIRECTV piracy. (VanderHoek Dep. at 25–26.) DIRECTV also cites VanderHoek's subscriber history, which shows that VanderHoek ordered a replacement DIRECTV access card in December of 1999 because he purportedly wished to begin subscribing again to DIRECTV services but cancelled his subscription after only one month. (Pl.'s Am. Objections and Resp. Def.'s 1st Set of Interrogs. No. 11, Pl.'s Br. Opp'n Ex. 4.) Finally, DIRECTV contends that VanderHoek's purchase of the Chip is evidence that he possessed an unlooper and was either already using a modified DIRECTV access card or intended to alter a DIRECTV access card for future use.

The Court concludes that this evidence is sufficient to create a genuine issue of material fact. VanderHoek claims that he ordered the Chip for a purpose unrelated to the interception of DIRECTV signals, i.e., to use in building a robotic arm. On the other hand, DIRECTV has presented

testimony from its expert witness that the Chip contained a code which would have been useful only to alter DIRECTV access cards and that the Chip would be useless for a robotics application. DIRECTV's evidence also shows that VanderHoek had the means to receive DIRECTV satellite signals, had an interest in pirate activity, and has a subscription history suggestive of pirate activity. Based upon this evidence, a reasonable fact-finder could infer that VanderHoek was actually using the Chip along with other pirate devices to decrypt and receive DIRECTV satellite signals and that he actually received those signals. DIRECTV's evidence is at least as strong as the evidence which the court in *Karpinsky* found sufficient to allow DIRECTV to survive the plaintiff's summary judgment motion. Therefore, VanderHoek's motion will be denied with respect to this claim.

### 2. Violation Of 18 U.S.C. § 2511(1)(a)

In order to establish its claim that VanderHoek violated § 2511(1)(a), DIRECTV must show that VanderHoek intercepted DIRECTV's signal. *See Sanders v. Robert Bosch Corp.*, 38 F.3d 736, 742–43 (4th Cir.1994). For the same reasons that DIRECTV's evidence has created a genuine issue of material fact with respect to the claim under 47 U.S.C. § 605(a), the Court concludes that DIRECTV's evidence also creates a genuine issue of material fact with regard to VanderHoek's interception of DIRECTV's signal under § 2511(1)(a). Therefore, the Court will also deny VanderHoek's motion on this claim.

### B. Motion To Dismiss

■ VanderHoek argues that DIRECTV's claim under 18 U.S.C. § 2511 must be dismissed because that section is a criminal provision which does not provide for a civil cause of action. This argument must be rejected, because while § 2511 itself does not provide for a private

right of action, it is well established that § 2520(a) provides a private right of action for violations of § 2511. *See DIRECTV, Inc. v. Cardona*, 275 F.Supp.2d 1357, 1368–69 (M.D.Fla.2003); *Gunderson v. Gunderson*, No. 02–1078–CVW–ODS, 2003 WL 1873912, at *1 (W.D.Mo. Apr.14, 2003); *DirecTV v. Westendorf*, No. 03 C 50210, 2003 WL 22139786, at *1 (N.D.Ill. Sept.16, 2003); *In re DoubleClick Inc. Privacy Litig.*, 154 F.Supp.2d 497, 514 n. 22 (S.D.N.Y.2001). VanderHoek's argument is really that DIRECTV fails to state a claim because it cites only § 2511 in its second claim and does not mention § 2520(a). However, DIRECTV cites § 2520(a) in its prayer for relief, and it is sufficiently clear that DIRECTV is alleging that VanderHoek violated § 2511(1)(a) as part of its claim under § 2520(a). Thus, DIRECTV states a claim for violation of § 2511(1)(a).

### IV. *Conclusion*

For the foregoing reasons, the Court will deny VanderHoek's motion for summary judgment. The Court will dismiss DIRECTV's claim based upon the alleged violation of 18 U.S.C. § 2512 and DIRECTV's conversion claim.

An Order consistent with this Opinion will be entered.